CHRISTOPHER SODERLUND, Plaintiff-Appellant v. NORTH CAROLINA SCHOOL OF THE ARTS; THE UNIVERSITY OF NORTH CAROLINA, RICHARD KUCH, Individ-UALLY AND IN HIS OFFICIAL CAPACITY, AND RICHARD GAIN, INDIVIDUALLY AND IN HIS OFFI-CIAL CAPACITY, Defendants-Appellees

No. COA96-377

(Filed 18 February 1997)

**Limitations, Repose, and Laches § 119 (NCI4th)— emotional distress—statute of limitations—tolled—mental disability**

The trial court erred in an action arising from a relationship between a School of the Arts professor and student by dismissing plaintiff's complaint for not having been filed within the three-year statute of limitations period pursuant to N.C.G.S. § 1-52(5) and (16) where plaintiff alleged in his complaint that his mental illness rendered him incompetent as defined by N.C.G.S. § 35A-1101(7) and therefore tolled the applicable statute of limitations in accordance with N.C.G.S. § 1-17(a)(3). Defendants had sufficient notice from the allegations in plaintiff's complaint that he was prevented from filing his claims due to mental disability in that plaintiff alleged that he suffered several mental break-

SODERLUND v. N.C. SCHOOL OF THE ARTS

[125 N.C. App. 386 (1997)]

downs, was diagnosed with PTSD, and was rendered incompetent within the statutory meaning due to his mental illness.

**Am Jur 2d, Limitation of Actions §§ 178, 179, 186-188.**

**Posttraumatic syndrome as tolling running of statute of limitations. 12 ALR5th 546.**

Appeal by plaintiff from order entered 20 December 1995 by Judge Donald R. Huffman in Forsyth County Superior Court. Heard in the Court of Appeals 4 December 1996.

*Elliot, Pishko, Gelbin & Morgan, P.A., by Ellen R. Gelbin, for plaintiff-appellant.*

*Wells, Jenkins, Lucas & Jenkins, P.L.L.C., by Susan H. Gray, for defendants-appellees.*

WALKER, Judge.

In his complaint, plaintiff alleged that in 1983, at age 15, he was admitted to the North Carolina School of the Arts (NCSA). Plaintiff began his schooling at NCSA as a ballet major.

In the winter of 1983, plaintiff was chosen to perform in the spring musical revue choreographed and directed by defendants Richard Kuch (Kuch) and Richard Gain (Gain). Kuch was the assistant dean and a faculty member and Gain was a faculty member in the modern dance department. According to plaintiff, Kuch and Gain convinced him that they could promote the careers of their favorite students based on their contacts and reputation in the dance community. However, without their promotion, plaintiff would be unable to find a job in this field. Kuch and Gain paid substantial attention to plaintiff, and made him feel unique and talented. Gain became plaintiff's mentor and confidant.

Further, Kuch and Gain taught their students that because dancing was a form of sexual expression, the students would become better dancers if they were sexually active, thereby improving their performances and career potential. Because sexual relationships between students and teachers were common knowledge at NCSA, plaintiff believed that such relationships were normal and acceptable as part of studying at the school.

In the spring of 1984, Gain brought plaintiff, then 16 years old, to the farmhouse he owned with Kuch. At that time, Gain served plain-

tiff alcoholic beverages and engaged in sexual relations with him. Thereafter, Gain again seduced plaintiff on several occasions, and was encouraged to do so by Kuch. Plaintiff alleges that he did not understand Gain's conduct to be wrong, but disliked the sexual relationship and therefore detached himself physically and emotionally during the seductions. Plaintiff only continued the sexual activity for fear of losing Gain's friendship and felt that if he resisted, Kuch and Gain would adversely affect his grades and dancing career. Although other faculty members were aware of plaintiff's relationship with Gain, none of them told plaintiff that this relationship was improper.

Subsequently, Kuch humiliated plaintiff during classes and rehearsals by making suggestive remarks to him in front of other students and by publicizing the fact that plaintiff and Gain were having a sexual relationship. In addition, after Gain ended his sexual relationship with plaintiff, Kuch and Gain ridiculed plaintiff about his appearance and dancing ability. As a result of such treatment, plaintiff became emotionally upset and began over-eating, drinking excessively and smoking.

At the end of the 1984 school year, Duncan Noble, the assistant dean of the ballet department, told plaintiff that he would not be invited back for the fall semester. Plaintiff then asked Kuch and Gain if he could be transferred to the modern dance department so he could stay at the school. Kuch transferred him for the summer semester but warned that he would be under intense scrutiny. During the summer session, Kuch and Gain tormented plaintiff by flirting with him on some occasions and ridiculing him on others. Kuch later refused to allow plaintiff back for the fall term.

Plaintiff did return for a summer session in 1986 because he wanted to earn the respect and praise of Kuch and Gain. Instead, Gain refused to speak to him and Kuch again verbally abused him. Because of Kuch and Gain's treatment of him, plaintiff felt severe guilt and shame and continued his self-destructive habits for the next seven years. During this time he was unable to form mature, healthy relationships with others and was unable to lead a normal life.

In the years following his residence at NCSA, plaintiff suffered several mental breakdowns. On 22 July 1992, during one of these mental breakdowns, plaintiff told his mother for the first time of his experiences with Kuch and Gain. As a result of this conversation, plaintiff understood that the actions of Kuch and Gain were improper. He thereafter began mental health therapy.

SODERLUND v. N.C. SCHOOL OF THE ARTS

[125 N.C. App. 386 (1997)]

After evaluating plaintiff in the fall of 1993, a psychologist diagnosed plaintiff with post-traumatic stress disorder (PTSD), directly caused by defendants' actions. The psychologist determined that until plaintiff told his mother about defendants' actions and the diagnosis was made, plaintiff had not realized nor was he capable of understanding, the effect and consequences of defendants' conduct, the connection between their conduct and his mental illness, or the fact that he had a cause of action against them.

Plaintiff filed this action for intentional, reckless, and negligent infliction of emotional distress, negligence, constitutional claims, and punitive damages against defendants Kuch and Gain, NCSA, and UNC on 19 July 1995. Thereafter, Kuch and Gain filed a motion to dismiss pursuant to N.C.R. Civ. P. 12(b)(6), and NCSA and UNC filed a motion to dismiss pursuant to N.C.R. Civ. P. 12(b)(1), (2) and (6). The trial court dismissed plaintiff's complaint pursuant to N.C.R. Civ. P. 12(b)(1), (2) and (6). Plaintiff subsequently abandoned his federal constitutional claims against Kuch and Gain, and his state constitutional and punitive damages claims against NCSA and UNC, but elected to pursue a negligence claim against NCSA and UNC under the Tort Claims Act, N.C. Gen. Stat. § 143-291(a) (1996).

The present appeal involves the dismissal of plaintiff's emotional distress, negligence, and punitive damages claims against Kuch and Gain individually, pursuant to N.C.R. Civ. P. 12(b)(6). The question for the court when deciding a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. . . ." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).

Plaintiff contends that the trial court erred in dismissing his complaint for not having been filed within the three-year statute of limitations period pursuant to N.C. Gen. Stat. § 1-52 (5) and (16) (1996). A statute of limitations can provide the basis for dismissal on a Rule 12(b)(6) motion if the face of the complaint establishes that plaintiff's claim is so barred. *Long v. Fink*, 80 N.C. App. 482, 484, 342 S.E.2d 557, 559 (1986).

Plaintiff alleged in his complaint and argues on appeal that his mental illness rendered him incompetent as defined by N.C. Gen. Stat. § 35A-1101(7) (1995) and therefore tolled the applicable statute of limitations in accordance with N.C. Gen. Stat. § 1-17(a)(3) (1996). "Incompetent adult" is defined by N.C. Gen. Stat. § 35A-1101(7) as

an adult or emancipated minor who lacks sufficient capacity to manage his own affairs or to make or communicate important decisions concerning his person, family, or property whether such lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition.

The present case is similar to that of *Dunkley v. Shoemate*, 121 N.C. App. 360, 465 S.E.2d 319, *disc. review denied*, 342 N.C. 894, 468 S.E.2d 773 (1996), which we find controlling. In *Dunkley*, plaintiff was hospitalized for depression and "debilitating psychological illness." *Id.* at 361, 465 S.E.2d at 320. After plaintiff's discharge, a resident in psychiatry at the hospital, who was assigned to provide plaintiff with psychiatric outpatient treatment, engaged in non-consensual sexual intercourse with her. *Id.* at 361, 465 S.E.2d at 321. Plaintiff filed an action against the resident and his employers for battery, assault, intentional infliction of emotional distress, fraud and negligence. *Id.* Defendants answered pleading the statute of limitations as an affirmative defense. *Id.* The trial court subsequently dismissed plaintiff's claims for failure to file within the applicable statute of limitations periods. *Id.*

The question in *Dunkley* was whether plaintiff was required to plead mental disability in avoidance of the affirmative defense of the statute of limitations. *Id.* On appeal, plaintiff argued that her mental disability tolled the statutes of limitations. *Id.* at 362, 465 S.E.2d at 321. This Court stated that although N.C.R. Civ. P. 8(c) requires the statute of limitations, when used as an affirmative defense, to be pled in a responsive pleading, N.C.R. Civ. P. 8(d) "deems affirmative defenses in the answer as being denied or avoided if a reply is neither required or permitted." *Id.* N.C.R. Civ. P. 7(a) does not require a party to file a reply to an affirmative defense asserted in the answer unless ordered to do so by the court, and "a party is not required to seek permission to plead matters in avoidance of the affirmative defense." *Id.* at 362-63, 465 S.E.2d at 321-22. In light of these facts, we held that the affirmative defense of statute of limitations was deemed avoided, the issue joined, and discovery could proceed. *Id.* at 363, 465 S.E.2d at 322. Therefore, plaintiff was not required to plead mental disability in her complaint, as other allegations in her complaint were sufficient to put defendants on notice that she may have been precluded from filing her claims within the statute of limitations period because of mental disability. *Id.* The case was remanded to the trial court for a determination of whether plaintiff's condition rose to the level

of "insanity" or incompetence as defined by N.C. Gen. Stat. § 35A-1101(7), thus tolling the statute of limitations. *Id.*

Here, as in *Dunkley*, defendants had sufficient notice from the allegations in plaintiff's complaint that he may have been prevented from filing his claims due to mental disability. Plaintiff alleged that he suffered several mental breakdowns, that he was diagnosed with PTSD, and that due to his mental illness, he was rendered incompetent within the meaning of N.C. Gen. Stat. § 35A-1101(7). We therefore reverse the decision of the trial court and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.

Judges LEWIS and SMITH concur.