CHRISTOPHER SODERLUND, Plaintiff v. RICHARD KUCH and RICHARD GAIN, Defendants

No. COA00-361

(Filed 15 May 2001)

## 1. Emotional Distress— intentional and negligent—expiration of statute of limitations

The trial court did not err by granting summary judgment in favor of two faculty members for plaintiff former students's claims of intentional and negligent infliction of emotional dis-

tress filed on 19 July 1995 based on the expiration of the three-year statute of limitations under N.C.G.S. § 1-52(5), because: (1) there is no genuine issue of material fact concerning when plaintiff manifested signs of severe emotional distress when he admitted it occurred following his 1986 departure from school; (2) while it may be true that until diagnosis plaintiff was not aware he suffered from post-traumatic stress disorder (PTSD) by that name, plaintiff's admissions show he did know for some years after leaving school in 1986 that he was suffering from some sort of emotional distress; (3) plaintiff's emotional distress was not latent since it could have been generally recognized and diagnosed as PTSD by a medical professional in 1986, meaning the pertinent statute expired at the end of the summer of 1989; and (4) plaintiff does not get the benefit of postponing the accrual of his cause of action until 1992 when he had a conversation with his mother about defendants' wrongful conduct or until 1993 when plaintiff was diagnosed with having PTSD.

**2. Emotional Distress— intentional and negligent—applicable statute of limitations**

The three-year statute of limitations under N.C.G.S. § 1-52(16) is not applicable to plaintiff former student's action for intentional and negligent infliction of emotional distress against two faculty members, because: (1) N.C.G.S. § 1-52(16) protects a potential plaintiff in the case of a latent injury; (2) plaintiff's injuries were apparent to plaintiff by his own admissions and his post-traumatic stress disorder could have been generally recognized and diagnosed by a medical professional in 1986; and (3) the accrual of emotional distress claims does not necessarily begin at the time of diagnosis, nor is an actual diagnosis always necessary to trigger accrual.

**3. Emotional Distress— intentional and negligent—tolling of statute of limitations not required—no showing of incompetency**

The trial court did not err in an action for intentional and negligent infliction of emotional distress by plaintiff former student against two faculty members when the trial court failed to toll the applicable statute of limitations based on plaintiff's alleged incompetence as defined under N.C.G.S. § 35A-1101(7), because: (1) plaintiff has not established that he was incompetent when his only allegation of incompetency is that his mental condition caused him to be incapable of understanding his legal rights,

SODERLUND v. KUCH

[143 N.C. App. 361 (2001)]

making or communicating important decisions about those rights or bringing a lawsuit when the term "affairs" in N.C.G.S. § 35-1101(7) encompasses more than just one transaction; and (2) evidence showed that since leaving school in 1986, plaintiff could and did manage his own affairs and did make important decisions concerning his person and property.

**4. Appeal and Error— mootness—sufficiency of evidence— claim already barred by statute of limitations**

Although plaintiff former student contends the trial court erred by granting summary judgment in favor of two faculty members on plaintiff's claims of intentional and negligent infliction of emotional distress filed on 19 July 1995 based on an alleged insufficiency of evidence, this argument is rendered moot since the three-year statute of limitations of N.C.G.S. § 1-52(5) bars plaintiff's claims.

Appeal by plaintiff from an order entered 30 December 1999 by Judge Judson D. DeRamus, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 26 January 2001.

*Elliott, Pishko, Gelbin & Morgan, P.A., by J. Griffin Morgan and Ellen R. Gelbin, for plaintiff-appellant.*

*Wells Jenkins Lucas & Jenkins, by Susan H. Gray, for defendant-appellees.*

HUNTER, Judge.

Christopher Soderlund ("plaintiff") appeals from an order granting summary judgment in favor of Richard Kuch and Richard Gain (collectively "defendants") dismissing plaintiff's claims for intentional and negligent infliction of emotional distress. Plaintiff assigns error to the trial court's grant of defendants' summary judgment motion on three grounds: (1) the applicable statute of limitations had not expired, (2) plaintiff's alleged incompetence tolled the applicable statute of limitations, and (3) plaintiff forecasted sufficient evidence that established each essential element of his claims of intentional and negligent infliction of emotional distress. After a careful review of the record, briefs, and arguments, we disagree with plaintiff's contentions, and therefore, we affirm the trial court.

The relevant allegations of the complaint show that in 1983, plaintiff, then age fifteen (15), was admitted to the North Carolina School

of the Arts ("NCSA"), where he began his studies as a ballet major. Sexual relationships between students and teachers were common knowledge at NCSA, and plaintiff believed that such relationships were a normal and acceptable part of studying at the school. In the spring of 1984, plaintiff, then age sixteen (16), began a sexual relationship with Gain, a NCSA faculty member in the modern dance department. During the relationship, Kuch, a NCSA assistant dean and faculty member, encouraged plaintiff to sexually submit to Gain, humiliated plaintiff by making suggestive remarks to him in front of other students, and then publicized plaintiff's sexual relationship with Gain. Later during the spring of 1984, Gain ended the relationship with plaintiff. Thereafter, defendants ridiculed plaintiff about his appearance and dancing skills. As a result, plaintiff became emotionally upset, and began over-eating, drinking excessively, and smoking.

At the end of the school year in 1984, plaintiff was informed that he was not going to be invited back for the next school year. In an attempt to continue his studies at NCSA, plaintiff requested and was allowed to transfer to the modern dance department for the summer semester. During this time, defendants flirted with plaintiff on some occasions and ridiculed him on others. Finally, when the summer session was complete, Kuch refused to allow plaintiff back into school for the fall semester.

Approximately two years passed when in 1986, plaintiff, then eighteen (18) years of age, returned to NCSA for a summer session in hopes of earning the respect and praise of defendants. During the summer, however, Gain did not speak to plaintiff, and Kuch verbally abused him.

As a result of defendants' treatment, plaintiff felt severe guilt and shame, and for the next seven years of his life, continued on a self-destructive course. During these years, plaintiff suffered several mental breakdowns, contemplated suicide, and was unable to lead a normal life or to form mature, healthy relationships. Ultimately, on 22 July 1992, plaintiff told his mother about his relationship with defendants. Based on this conversation, plaintiff allegedly understood for the first time that defendants' actions were improper. Subsequently in the fall of 1993, plaintiff was evaluated by a psychologist who diagnosed him with post-traumatic stress disorder ("PTSD") directly caused by the actions of defendants. The psychologist determined that until plaintiff told his mother about defendants' actions and the diagnosis was made, plaintiff was not aware that defendants' actions were improper, that there was a link between defendants' actions and

his mental condition, and that he had a cause of action against defendants.

On 19 July 1995, plaintiff filed suit against Kuch, Gain, NCSA, and the University of North Carolina ("UNC") alleging intentional, reckless, and negligent infliction of emotional distress, negligence, constitutional violations, and seeking punitive damages. All defendants filed motions to dismiss which the trial court granted pursuant to N.C.R. Civ. P. 12(b)(1), (2), and (6) (1999). Plaintiff appealed the dismissal of his claims against Kuch and Gain, but he subsequently abandoned his civil claims against NCSA and UNC, and instead pursued them for negligence under the Tort Claims Act, N.C. Gen. Stat. § 143-291(a) (1996).

This case first came before us in *Soderlund v. N.C. School of the Arts*, 125 N.C. App. 386, 481 S.E.2d 336 (1997), after the trial court's grant of defendants' motions to dismiss pursuant to N.C.R. Civ. P. 12(b)(1), (2), and (6). In our previous opinion, this Court found that defendants had sufficient notice from the allegations in plaintiff's complaint that he may have been prevented from filing his claims due to his alleged incompetence, as defined in N.C. Gen. Stat. § 35A-1101(7) (1999). *Soderlund*, 125 N.C. App. 386, 481 S.E.2d 336. Therefore, we reversed the trial court's dismissal and remanded the case for a determination of whether plaintiff's condition rose to the level of incompetence as defined in § 35A-1101(7), thus tolling the applicable statute of limitations. *Id.*

Upon remand, discovery was conducted. Then, on 16 April 1999, defendants filed a motion for summary judgment. The motion was heard at the 23 August 1999 Civil Session of Forsyth County Superior Court, the Honorable Judson D. DeRamus, Jr. presiding. By order dated 30 December 1999, Judge DeRamus granted defendants' summary judgment motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 56 (1999). With respect to the applicability of the statute of limitations and the existence of all necessary elements of both intentional and negligent infliction of emotional distress, the trial court found that plaintiff's claim lacked a genuine issue of material fact. In finding no genuine issue of material fact as to the statute of limitations, we conclude that Judge DeRamus was necessarily ruling that plaintiff's alleged incompetence did not rise to the level of incompetence, as defined in § 35A-1101(7), necessary to toll the statute of limitations. Judge DeRamus thereby dismissed plaintiff's claims with prejudice, and plaintiff now appeals to this Court.

**[1]** In his first assignment of error, plaintiff claims that the trial court erred when it granted summary judgment based on the expiration of the applicable statute of limitations. Plaintiff argues that his causes of action for intentional and negligent infliction of emotional distress did not accrue, thus the statute of limitations did not begin to run until his injury became apparent or ought reasonably to have become apparent to him—which was only after his conversation with his mother in 1992 or his diagnosis by his psychologist in 1993. We disagree.

"At the outset, we note that the standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). Furthermore, "the evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Id.* Therefore, summary judgment is only proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999).

"Generally, whether a cause of action is barred by the statute of limitations is a mixed question of law and fact." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 69 N.C. App. 505, 508, 317 S.E.2d 41, 43 (1984), *aff'd*, 313 N.C. 488, 329 S.E.2d 350 (1985). However, when "the statute of limitations is properly pleaded, and the facts with reference to it are not in conflict, it becomes a matter of law, and summary judgment is appropriate." *Id.* (citation omitted). Here, defendants filed, and the trial court granted, a motion for summary judgment pursuant to Rule 56 upon the grounds that there was a lack of a genuine issue of material fact with respect to the applicability of the statute of limitations, *inter alia.* " 'Once a defendant has properly pleaded the statute of limitations, the burden is then placed upon the plaintiff to offer a forecast of evidence showing that the action was instituted within the permissible period after the accrual of the cause of action.' " *Waddle v. Sparks*, 331 N.C. 73, 85-86, 414 S.E.2d 22, 28-29 (1992) (quoting *Pembee*, 313 N.C. 488, 491, 329 S.E.2d 350, 353).

In an action for intentional infliction of emotional distress, a plaintiff must prove "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335

(1981). Similarly, in an action for negligent infliction of emotional distress, a plaintiff must prove "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Assuming *arguendo*, for the sake of this appeal, that plaintiff has established each essential element of both torts, plaintiff has the burden of showing that his action was brought within the applicable statute of limitations.

Because emotional distress claims are not specifically denominated under any limitation statute, our courts have consistently held that, "[c]auses of action for emotional distress, both intentional and negligent, are governed by the three-year statute of limitation provisions of N.C. Gen. Stat. § 1-52(5) . . . ." *Russell v. Adams*, 125 N.C. App. 637, 640, 482 S.E.2d 30, 33 (1997); *see also King v. Cape Fear Mem. Hosp.*, 96 N.C. App. 338, 341, 385 S.E.2d 812, 814 (1989). Specifically, N.C. Gen. Stat. § 1-52(5) (1999) sets a three-year statute of limitations "for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated."

An essential element of both intentional and negligent infliction of emotional distress is "severe emotional distress," which our courts have defined to "mean[] any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which *may be generally recognized and diagnosed by professionals trained to do so.*" *Johnson*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (emphasis added). Significant for the purposes of this appeal, "the three-year period of time for [emotional distress] claims does not begin to run (accrue) until the 'conduct of the defendant causes extreme [or severe] emotional distress.'" *Russell*, 125 N.C. App. at 641, 482 S.E.2d at 33 (quoting *Bryant v. Thalhimer Brothers, Inc.*, 113 N.C. App. 1, 12, 437 S.E.2d 519, 525 (1993)); *see also Ruff v. Reeves Brothers, Inc.*, 122 N.C. App. 221, 227, 468 S.E.2d 592, 597 (1996). Sometimes, causes of action for emotional distress "take years to manifest the severe emotional results required to complete the tort." *Bryant*, 113 N.C. App. at 13, 437 S.E.2d at 526. However, that is not the case *sub judice*.

In the instant action, plaintiff's last contact with defendants was in the summer of 1986, when plaintiff, then age 18, returned to NCSA, "desperate and determined to earn the respect and affirmation of

[defendants] and obtain some closure on the abrupt and upsetting termination of [his] relationship with Gain." During that summer, Gain refused to talk to plaintiff, and Kuch verbally abused him. Since plaintiff makes no allegations of emotional distress between the time he left NCSA in 1984 and returned in 1986—except for his "self-destructive behavior which involved over-eating, drinking, and smoking," we view plaintiff's claims from the date of plaintiff's last contact with defendants in 1986. We note that by the summer of 1986, plaintiff had already attained the age of 18 and therefore was no longer a minor.

Uncontroverted evidence developed during discovery shows that plaintiff's emotional distress was triggered upon his leaving NCSA in 1986. In an affidavit, plaintiff states that following his 1986 departure from NCSA, and

> [f]or the next seven years of [his] life, [he] suffered from extreme feelings of shame and confusion about [his] own sexuality. [He] tried to alleviate the pain [he] was feeling by abusing alcohol. [He was] unable to form healthy relationships with others or lead a normal life. [He] also had several mental breakdowns during this period. The defendants' rejection of [him] and negative judgments of [him] upset [him] so much that [he] contemplated suicide.

Here, even viewing the evidence in the light most favorable to plaintiff, there is no genuine issue of material fact as to when plaintiff manifested signs of "severe emotional distress." By his own admission, he manifested signs of "severe emotional distress"—"shame," "confusion," alcohol abuse, inability "to form healthy relationships," inability to "lead a normal life," "several mental breakdowns," and "contemplat[ion of] suicide"—following his 1986 departure from NCSA and for the next seven years of his life. Based on this evidence, it is clear that plaintiff's "severe emotional distress" and PTSD diagnosis could have been *"generally recognized and diagnosed by professionals trained to do so,"* at that time. *Johnson,* 327 N.C. at 304, 395 S.E.2d at 97 (emphasis added). Therefore, we find that plaintiff's admissions forecast sufficient evidence of his "severe emotional distress" and PTSD. Consequently, plaintiff's "severe emotional distress" and PTSD matured to the level of being actionable after his leaving NCSA in the summer of 1986.

While it may be true that until diagnosis, plaintiff was not aware that he suffered from PTSD by that name, plaintiff's admissions show

that he did know for some years after leaving NCSA in 1986 that he was suffering from some sort of emotional distress. We find that because plaintiff's emotional distress could have been generally recognized and diagnosed as PTSD by a medical professional in 1986, it was not latent.

Furthermore, plaintiff's psychologist testified that during her sessions with plaintiff, plaintiff admitted that while defendants' conduct was on-going, "he felt that it was not a good thing," and he knew "that something not okay had occurred . . . ." Moreover, we note that plaintiff's mother—a layperson and not a trained professional—was able to recognize and inform plaintiff that "the defendants['] conduct was legally wrongful and had caused damage to [him]," after a conversation with her son in 1992. By further delaying treatment until 1993— approximately seven years after defendants' last contact with plaintiff and approximately one year after plaintiff's conversation with his mother—plaintiff does not now get the benefit of postponing the accrual of his cause of action until 1992 (the date of plaintiff's conversation with his mother) or 1993 (the date of his diagnosis as having PTSD).

Hence, plaintiff's intentional and negligent infliction of emotional distress claims accrued after the summer session of 1986. Once plaintiff's causes of actions accrued, the three-year statute of limitations of N.C. Gen. Stat. § 1-52(5) began to run, and thus expired at the end of the summer of 1989. Plaintiff filed his complaint on 19 July 1995, well after the three-year statute of limitations had expired. Consequently, plaintiff's claims are time-barred.

[2] Plaintiff's primary argument on appeal is that the statute of limitations of N.C. Gen. Stat. § 1-52(16) (1999) should apply to his causes of action for intentional and negligent infliction of emotional distress. Again, we disagree.

Statutes of limitation in our state "are subject to expansion . . . by North Carolina's 'discovery' . . . statutes." *Leonard v. England*, 115 N.C. App. 103, 106-07, 445 S.E.2d 50, 52 (1994); *see also Pembee*, 313 N.C. 488, 492-93, 329 S.E.2d 350, 353-54. A "discovery statute" allows a statute of limitations to "not begin to run until plaintiff discovers, or in the exercise of reasonable care, should have discovered, that he was injured as a result of defendant's wrongdoing." *Black v. Littlejohn*, 312 N.C. 626, 642, 325 S.E.2d 469, 480 (1985) (*Black* was analyzed under § 1-15(c), the statute of limitations applicable to med-

ical malpractice claims; therefore, *Black* is distinguishable from the case at bar).

Our legislature has expressly provided a "discovery statute" in N.C. Gen. Stat. § 1-52. Specifically, § 1-52(16) provides a three-year statute of limitations,

> [u]nless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

"The primary purpose of N.C. Gen. Stat. § 1-52(16) is that it is intended to apply to plaintiffs with latent injuries." *Robertson v. City of High Point*, 129 N.C. App. 88, 91, 497 S.E.2d 300, 302, *disc. rev. denied*, 348 N.C. 500, 510 S.E.2d 654 (1998). Specifically, § 1-52(16) "protect[s] a potential plaintiff in the case of a latent injury by providing that a cause of action does not accrue until the injured party becomes aware or should reasonably have become aware of the existence of the injury." *Pembee*, 313 N.C. at 493, 329 S.E.2d at 354. "[A]s soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run." *Id.* At bar, plaintiff's injuries were apparent to plaintiff and his PTSD could have been generally recognized and diagnosed by a medical professional in 1986. Therefore as we have already held, plaintiff's injuries and PTSD were not latent; thus, § 1-52(16) is inapplicable to the facts of this case.

Plaintiff relies heavily upon a Fourth Circuit Federal Court of Appeals opinion interpreting §§ 1-52(5) and 1-52(16), *Doe v. Doe*, 973 F.2d 237 (4th Cir. 1992). We recognize that "with the exception of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State." *State v. Woods*, 136 N.C. App. 386, 390, 524 S.E.2d 363, 365 (2000). Therefore, we find that the decision in *Doe* is not binding upon this Court.

In further arguing for delayed discovery and the application of § 1-52(16) to the facts of his case, plaintiff raises several cases that

utilize N.C. Gen. Stat. § 1-52(16) to delay accrual until discovery of an injury. *See Wilson v. McLeod Oil Co.*, 327 N.C. 491, 398 S.E.2d 586 (1990) *and Crawford v. Boyette*, 121 N.C. App. 67, 464 S.E.2d 301 (1995) (in water contamination cases, accrual does not begin until official notification of water contamination); *see also Dunn v. Pacific Employers Ins. Co.*, 332 N.C. 129, 418 S.E.2d 645 (1992) (in occupational disease cases, negligence action accrues when disease is diagnosed). Again, these cases are clearly distinguishable from the case at bar as they deal with latent injuries—the injuries were not readily apparent.

As to plaintiff's contention that his emotional distress claims did not accrue and the statute of limitations did not begin to run until after his being diagnosed by his psychologist in 1993, we reiterate that "severe emotional distress" is any emotional or mental disorder *"which may be generally recognized and diagnosed by professionals trained to do so." Johnson*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (emphasis added). The crux of establishing "severe emotional distress" is that the emotional or mental disorder *may generally be diagnosed by professionals trained to do so*; however, an "actual diagnosis" by medical professionals is not always required or necessary. Moreover, the accrual of emotional distress claims does not necessarily begin at the time of diagnosis, nor is an "actual diagnosis" always necessary to trigger accrual. *See Price v. Fasco Controls Corp.*, 1999 WL 33117437 (W.D.N.C. 1999); *see also Johnson v. ADT Security Systems, Inc.*, 1999 WL 1940046 (W.D.N.C. 1999). Thus, the three-year period of time for emotional distress claims accrues when the "conduct of the defendant causes extreme emotional distress." *Bryant*, 113 N.C. App. 1, 12, 437 S.E.2d 519, 525.

In some cases, PTSD is latent and sufferers complain of impaired/repressed memories. However, plaintiff here does not suffer from either latent PTSD or impaired/repressed memories. Plaintiff's own affidavit and psychologist's deposition testimony confirms that plaintiff realized from 1986 forward that defendants' conduct inflicted upon him was wrong. Plaintiff's realization of the wrongfulness of the conduct—although self-denied—through his conversation with his mother and treatment by his psychologist—only confirmed what he knew, but denied, all along, that defendants' conduct was wrongful. Furthermore, plaintiff offered no evidence, neither did his psychologist testify, that plaintiff did not remember, or had repressed memories of his experiences with defendants. Hence, plaintiff's injury and his PTSD were apparent in 1986, and thereby not latent.

.

Therefore, we find that plaintiff had enough information to bring suit in 1986, and by his own admissions, he was aware of his injury, the causation, and the wrongdoing by defendants. Thus, the application of § 1-52(16) is not warranted under the facts of this case.

Finally, we take this opportunity to distinguish this Court's decision in *Russell*, 125 N.C. App. 637, 482 S.E.2d 30, in light of our decision in this case. In *Russell*, this Court stated that claims for emotional distress "do not accrue until the plaintiff 'becomes aware or should reasonably have become aware of the existence of the injury.' " *Id.* at 641, 482 S.E.2d at 33 (quoting *Pembee*, 313 N.C. at 493, 329 S.E.2d at 354). The facts in *Russell* show that the plaintiff sued her daughter's psychologist (defendant) claiming negligent and intentional infliction of emotional distress, *inter alia*. *Russell*, 125 N.C. App. 637, 482 S.E.2d 30. The plaintiff's claims were based upon the psychologist's (defendant) statements to the daughter (patient) in 1989 and the daughter's father in 1992 that the plaintiff was mentally ill with a borderline personality. *Id.* In reversing the trial court's grant of defendant's motion to dismiss, we found that the complaint was silent as to when plaintiff's alleged severe emotional distress manifested itself, and thus, we were unable to determine when the action accrued. *Id.* Therefore, at the time defendant made his motion to dismiss, it was unclear whether plaintiff's injuries were latent. Contrarily, the present plaintiff's admissions show that his injuries were not latent at the summary judgment stage. Since plaintiff's injuries were not latent here, *Russell* is distinguished.

**[3]** In his next assignment of error, plaintiff contends that the trial court erred in not tolling the applicable statute of limitations due to plaintiff's alleged incompetence as defined in N.C. Gen. Stat. § 35A-1101(7). However, we hold that plaintiff has not established that he was incompetent. Thus, we reject this assignment of error.

In North Carolina, statutes of limitation are also "subject to expansion . . . by North Carolina's . . . 'disabilities' statutes." *Leonard*, 115 N.C. App. 103, 106-07, 445 S.E.2d 50, 52. The disability statute which might operate to toll the statute of limitations in the case at bar is N.C. Gen. Stat. § 1-17(a) (1999), which states in pertinent part:

> (a) A person entitled to commence an action who is at the time the cause of action accrued . . .
>
> . . .

(3) Incompetent as defined in G.S. 35A-1101(7) . . . may bring his action within the time herein limited, after the disability is removed, . . . when he must commence his action . . . within three years next after the removal of the disability, and at no time thereafter.

Section 35A-1101(7) defines an incompetent adult as being,

an adult or emancipated minor who lacks sufficient capacity to *manage the adult's own affairs* or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition.

N.C. Gen. Stat. § 35A-1101(7) (emphasis added). The appropriate test for establishing an adult incompetent "is one of mental competence to *manage one's own affairs*." *Cox v. Jefferson-Pilot Fire and Casualty Co.*, 80 N.C. App. 122, 125, 341 S.E.2d 608, 610 (1986) (emphasis added); *see also Hagins v. Redevelopment Comm.*, 275 N.C. 90, 104, 165 S.E.2d 490, 499 (1969). The term "affairs" encompasses more than "just one transaction or one piece of property to which he may have a unique attachment." *Hagins*, 275 N.C. at 104, 165 S.E.2d at 499.

Plaintiff's only allegation regarding his incompetency is that his mental condition "cause[d] him to be incapable of understanding his legal rights, making or communicating important decisions about those rights or bringing a lawsuit . . . ." As stated above, the term "affairs" in § 35A-1101(7) encompasses more than just one transaction. *See id.* Moreover, evidence presented during discovery showed that since leaving NCSA in 1986, plaintiff arranged for places to live, signed leases, cooked, went shopping, held several jobs, attended college at two institutions, obtained and renewed driver's licenses from three states, drove vehicles, owned farmland, traveled and lived in foreign countries, produced a ballet, and created music. The evidence is sufficient to show that plaintiff could and did manage his own affairs and make important decisions concerning his person and property after his 1986 departure from NCSA. Thus, we hold plaintiff was not incompetent as per § 35A-1101(7), and plaintiff's mental condition did not warrant tolling the three-year statute of limitations of § 1-52(5).

In arguing that the statute of limitations should have been tolled until his alleged incompetency was removed, plaintiff raises this

SODERLUND v. KUCH

[143 N.C. App. 361 (2001)]

Court's decision in *Leonard*, 115 N.C. App. 103, 445 S.E.2d 50. In *Leonard*, this Court held that a thirty-nine year old plaintiff produced sufficient evidence that her repression of memories and PTSD suffered as a result of her grandmother's alleged sexual, physical, and emotional abuse—that occurred approximately twenty-eight years earlier when the plaintiff was age 11—rendered plaintiff "incompetent" within the meaning of § 35A-1101(7) until she was diagnosed by a medical professional. *Id.* Therefore, we held that the applicable statutes of limitation were tolled until plaintiff's diagnosis, and summary judgment based on the statutes of limitation was improper. *Id.* Again, a key distinction between *Leonard* and the case at bar is that the plaintiff in *Leonard* suffered from PTSD *and* repressed memories of abuse, a latent injury. Thus, we find *Leonard* not to be controlling in the case *sub judice*.

[4] Finally, in his third assignment of error, plaintiff contends that the trial court's grant of summary judgment was error as he forecasted sufficient evidence to establish each essential element of his claims of intentional and negligent infliction of emotional distress. Having found that the three-year statute of limitations of § 1-52(5) bars plaintiff's claims, the merits of this argument are rendered moot. Therefore, we need not address this assignment.

In summary, we hold that plaintiff's intentional and negligent infliction of emotional distress claims—which accrued after plaintiff left NCSA in the summer of 1986—were time-barred in 1989 by the three-year statute of limitations of N.C. Gen. Stat. § 1-52(5). Further, we hold that N.C. Gen. Stat. § 1-52(16) is inapplicable to the facts of plaintiff's case; and plaintiff was not incompetent as defined in N.C. Gen. Stat. § 35A-1101(7), thus the statute of limitations of § 1-52(5) was not tolled.

Affirmed.

Judges WALKER and CAMPBELL concur.