ARROWOOD, Judge.
 

 *337
 
 Krista Ragsdale ("Krista"), guardian ad litem for Alec Seeburger ("Alec"), ("plaintiff") appeals from an order granting summary judgment in favor of Dr. John Whitley ("Dr. Whitley") and Cumberland County Hospital System, Inc., d/b/a Cape Fear Valley Health System ("defendants"). For the reasons stated herein, we reverse the order of the trial court and remand for further proceedings.
 

 I.
 
 Background
 

 On 20 May 2015, Alec filed a complaint for medical malpractice against Dr. Whitley and Cape Fear Valley Neurosurgery d/b/a Cape Fear Valley Health System Specialty Group, LLC f/k/a Cape Fear Valley Health System, Inc. On 12 November 2015, Alec voluntarily dismissed the complaint pursuant to Rule 41 of the North Carolina Rules of Civil Procedure.
 

 On 7 December 2015, plaintiff was appointed as guardian ad litem ("GAL") for Alec. In an order filed 31 December 2015, the trial court stated that "[i]t appears to the Court from [Krista's] affidavit and the statement from his treating physician that Alec [ ] is incapable of conducting his own affairs and is entitled to the appointment of a Guardian ad Litem."
 

 On 31 December 2015, plaintiff refiled the complaint against defendants. On 5 April 2016, plaintiff filed an amended complaint. Plaintiff alleged as follows: Alec was born on 19 January 1996 and was until his eighteenth birthday on 19 January 2014, "a minor and was then, continuously has been and is presently under a disability preventing him from initiating this civil action for medical malpractice and professional negligence by the Defendants in this case." Plaintiff alleged that her claim was filed within the applicable statute of repose in that the last act giving rise to the cause of action occurred on 12 February 2012, when defendants' negligent treatment of Alec was discovered. In February of 2011, Alec began experiencing peripheral vision difficulties and was later diagnosed with having a large pituitary adenoma. A blood test to determine prolactin levels of the large pituitary adenoma could determine whether it should be treated surgically or medically. Plaintiff alleged that Dr. Whitley, Alec's neurosurgeon, when evaluating the need for and extent of brain surgery, and while treating Alec after surgery, negligently failed to assess the nature of the adenoma by failing to order a blood test to determine whether the pituitary adenoma could be treated medically instead of surgically.
 

 *338
 
 Alec underwent surgery with Dr. Whitley on 6 March 2011. The surgery resulted in substantial swelling of Alec's brain, proximately causing a severe stroke and "severe, permanent, and debilitating neurological damage in addition to the severe, permanent, and debilitating neurological damage previously caused by the extensive and invasive brain surgery performed by Defendant Whitley." Plaintiff further alleged that surgery was unnecessary and inappropriate because Alec had a prolactinoma which should have been treated medically rather than surgically. Dr. Whitley's failure to order a blood test was a departure from the required or expected standard of care. Dr. Whitley continued to treat Alec until or about 12 February 2012,
 
 *370
 
 during which time Alec "experienced great pain and suffering, inability to see or walk and substantial neurological deficits."
 

 Plaintiff alleged that in February of 2012, Alec began receiving medical services from Dr. Gerald Grant ("Dr. Grant"). Dr. Grant ordered a blood test which established that Alec's "tumor was a prolactinoma which was treatable medically." Plaintiff alleged that Dr. Whitley's surgery and the delay in beginning appropriate medical treatment of the tumor had proximately caused "severe and permanent neurological and physiological damage" to Alec.
 

 On 6 May 2016, defendants filed an answer to the amended complaint. On 27 February 2017, defendants also filed a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure.
 

 In a 16 May 2017 order, the trial court granted defendants' motion for summary judgment and recited the basis of its determination:
 

 IT APPEARING TO THE COURT that this is a medical malpractice action pursuant to N.C.G.S. § 90-21.12 and that the statute of limitations for this matter was governed by N.C.G.S. § 1-15(c) and § 1-17(b) ;
 

 ... that [Alec] was born on January 19, 1996;
 

 ... that the events giving rise to the Plaintiff's Complaint occurred on or about March 7, 2011;
 

 ... that the Plaintiff was 18 years old as of January 19, 2014, and 19 years old as of January 19, 2015;
 

 ... that [Alec] filed the initial Complaint in his own name without the appointment of a guardian ad litem on May 20, 2015; the initial Complaint contained no allegations
 
 *339
 
 or representations that Plaintiff was incompetent, and that paragraph 10 of the initial Complaint stated, "This claim for relief is filed within the applicable Statute of Limitations because [Alec] until January 19, 2014 was a minor and the three year statute of limitations began running on that date." Therefore, it appears to the Court that the initial Complaint was filed after the expiration of the applicable statute of limitations, and while the injured Plaintiff was under no judicially recognizable disability, nor incompetent.
 

 ... that Plaintiff voluntarily dismissed his Complaint without prejudice on November 12, 2015. At no time prior to the dismissal of the Complaint did the Plaintiff allege or represent to the Court that the Plaintiff was not competent.
 

 ... that the Plaintiff re-filed a Complaint on December 31, 2015, after the appointment of a guardian ad litem, and that, for the first time, Plaintiff alleged in the re-filed Complaint that he was under a disability. The Plaintiff never was adjudicated incompetent pursuant to the purposes and intent of N.C.G.S. Chapter 35A;
 

 ... that a judicial determination of the Plaintiff's competency was never made pursuant to N.C.G.S. Chapter 35A and the Plaintiff failed to demonstrate or otherwise meet its burden of proof with regard to Plaintiff's competency at the time of the filing of the original Complaint, at the time of the re-filing of the Complaint, and as of the time of the hearing on Defendant's Motion for Summary Judgment;
 

 ... that the current action, like the initial Complaint, was filed after the expiration of the applicable statute of limitations, that the injured Plaintiff never has been adjudicated incompetent for the purposes of N.C.G.S. Chapter 35A, and that therefore there is no genuine issue of material fact as to whether the statute of limitations is a bar to the injured Plaintiff's claims.
 

 On 5 June 2017, plaintiff filed timely notice of appeal.
 

 II.
 
 Discussion
 

 On appeal, plaintiff argues that the trial court erred in granting summary judgment in favor of defendants. Specifically, plaintiff contends that the trial court erred by determining that an adjudication of
 
 *340
 
 incompetency pursuant to Chapter 35A of the North Carolina General Statutes was necessary to toll the statute of limitations. In addition, plaintiff contends that there was a genuine issue of material fact as to whether Alec had been incompetent since his eighteenth birthday
 
 *371
 
 until 7 December 2015, the date his GAL was appointed. We agree.
 

 "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' "
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008) (quoting
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 523-24,
 
 649 S.E.2d 382
 
 , 385 (2007) ). "The evidence produced by the parties is viewed in the light most favorable to the non-moving party."
 
 Hardin v. KCS Intern., Inc.
 
 ,
 
 199 N.C.App. 687
 
 , 695,
 
 682 S.E.2d 726
 
 , 733 (2009) (citation omitted).
 

 In this appeal, we must first determine whether the trial court erred by determining that plaintiff must have obtained an adjudication of incompetency under Chapter 35A in order for the applicable statute of limitations to be tolled.
 

 "Questions of statutory interpretation are questions of law[.] ... The primary objective of statutory interpretation is to give effect to the intent of the legislature. The plain language of a statute is the primary indicator of legislative intent."
 
 First Bank v. S & R Grandview, L.L.C.
 
 ,
 
 232 N.C.App. 544
 
 , 546,
 
 755 S.E.2d 393
 
 , 394 (2014) (internal citations omitted).
 

 When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment.
 

 Diaz v. Division of Social Services
 
 ,
 
 360 N.C. 384
 
 , 387,
 
 628 S.E.2d 1
 
 , 3 (2006) (internal citations omitted).
 

 The statute of limitations for "a cause of action for malpractice arising out of the performance of or failure to perform professional services" is three years from the date the action accrued. The limitations period begins to accrue at "the time of the occurrence of the last act of the defendant giving rise to the cause of action[.]"
 
 N.C. Gen. Stat. § 1-15
 
 (c) (2015). Actions on behalf of minors for malpractice are subject to
 
 *341
 

 N.C. Gen. Stat. § 1-15
 
 (c) 's limitations periods, "except that if those time limitations expire before the minor attains the full age of 19 years, the action may be brought before the minor attains the full age of 19 years."
 
 N.C. Gen. Stat. § 1-17
 
 (b) (2015). However,
 
 N.C. Gen. Stat. § 1-17
 
 (a) provides, in pertinent part, that a "person entitled to commence an action who is under a disability at the time the cause of action accrued may bring his or her action within the time limited in this Subchapter, after the disability is removed[.]"
 
 N.C. Gen. Stat. § 1-17
 
 (a). For the purposes of
 
 N.C. Gen. Stat. § 1-17
 
 (a), "a person is under a disability if the person ... is incompetent as defined in G.S. 35A-1101(7) or (8)."
 
 N.C. Gen. Stat. § 1-17
 
 (a)(3). N.C. Gen. Stat. § 35A-1101(7) provides that an "[i]ncompetent adult"
 

 means an adult or emancipated minor who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition.
 

 N.C. Gen. Stat. § 35A-1101(7) (2015).
 

 Although the trial court found and defendants contend that Alec must have been adjudicated incompetent pursuant to Chapter 35A of our General Statutes in order for the statute of limitations to be tolled, we are not persuaded. We find the language of
 
 N.C. Gen. Stat. § 1-17
 
 (a) to be clear. If a person meets the statutory definition of an "incompetent adult" under N.C. Gen. Stat. § 35A-1101(7), the applicable statute of limitations is tolled until the disability is removed. The General Assembly made no finding that an adjudication of incompetency under Chapter 35A was required in order to toll the statute of limitations. If that had been their intent, they could have easily explicitly stated such. "When the language of the statute is clear, such as the language in this case, we are required to give the statute its logical application."
 

 *372
 

 Osborne by Williams v. Annie Penn Memorial Hosp., Inc.
 
 ,
 
 95 N.C.App. 96
 
 , 102,
 
 381 S.E.2d 794
 
 , 797 (citation omitted),
 
 disc
 
 .
 
 review denied
 
 ,
 
 325 N.C. 547
 
 ,
 
 385 S.E.2d 500
 
 (1989).
 

 Moreover, we find our holding in
 
 Fox v. Health Force, Inc.
 
 ,
 
 143 N.C.App. 501
 
 ,
 
 547 S.E.2d 83
 
 ,
 
 cert. denied
 
 ,
 
 354 N.C. 216
 
 ,
 
 553 S.E.2d 912
 
 (2001), to be persuasive. In
 
 Fox
 
 , Gail Howard suffered from multiple sclerosis but was a "lively individual, able to do almost everything except walk and feed herself."
 
 Id.
 
 at 502,
 
 547 S.E.2d at 84
 
 . The plaintiff, Gail Howard's guardian ad litem, alleged that on 20 October 1993, the defendants'
 

 *342
 
 negligent conduct proximately caused Gail Howard to suffer permanent brain damage and that Gail Howard had been in a "permanent vegetative state[ ]" ever since.
 

 Id.
 

 The plaintiff filed suit against the defendants and her claims were dismissed due to various deficiencies in pleading, deficiencies in service and process, and failure to have a guardian ad litem appointed.
 
 Id.
 
 at 503-504,
 
 547 S.E.2d at 85-86
 
 . The plaintiff eventually obtained new counsel, Gail Howard was properly adjudicated legally incompetent, and Gail Howard was appointed a legal guardian and guardian ad litem.
 
 Id.
 
 at 504,
 
 547 S.E.2d at 85
 
 . The plaintiff filed a Rule 60 Motion for Relief on 8 December 1998, moving for relief from the orders of dismissal and penalties as to the previously filed complaints, arguing that the orders were "voidable due to extraordinary circumstances."
 

 Id.
 

 The trial court granted the plaintiff's Rule 60(b)(6) motion, giving the plaintiff relief from all dismissals, costs, and fee orders entered in the previous cases.
 
 Id.
 
 at 504,
 
 547 S.E.2d at 86
 
 . The trial court also concluded that Gail Howard's claims began to run no earlier than 28 September 1998, the date she was adjudicated incompetent and her mother was appointed as her legal guardian, and the defendants appealed.
 
 Id.
 
 at 504-505,
 
 547 S.E.2d at 86
 
 . On appeal, the defendants argued that the trial court erred by granting the plaintiff's Rule 60(b)(6) motion.
 
 Id.
 
 at 505,
 
 547 S.E.2d at 86
 
 . Our Court ruled as follows:
 

 Because Gail was not yet adjudicated incompetent, although in fact she clearly was, the statute of limitations was tolled.
 
 N.C. Gen. Stat. § 1-17
 
 (a)(3) (2000). Once her guardian was appointed to represent her interests, the limitation period began to run from the time of the appointment.
 
 N.C. Gen. Stat. § 97-50
 
 (2000) ;
 
 Jefferys v. Tolin
 
 ,
 
 90 N.C.App. 233
 
 ,
 
 368 S.E.2d 201
 
 (1988). Thus, the trial court correctly designated 28 September 1998 as the first day of the limitation period.
 

 Id.
 
 at 507,
 
 547 S.E.2d at 87
 
 .
 

 The Court's holding in
 
 Fox
 
 stands for the proposition that an adjudication of incompetency is not required for the tolling of the statute of limitations. As a result, we find that the trial court erred by determining that an adjudication of incompetency pursuant to Chapter 35A was required for the statute of limitations to be tolled in the present case.
 

 Next, we must determine whether, viewing the evidence in the light most favorable to plaintiff, there was a genuine issue of material fact as to whether Alec had been an incompetent adult since his eighteenth birthday until the date his GAL was appointed.
 

 *343
 
 Generally, whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. However, when the statute of limitations is properly pleaded, and the facts with reference to it are not in conflict, it becomes a matter of law, and summary judgment is appropriate.... Once a defendant has properly pleaded the statute of limitations, the burden is then placed upon the plaintiff to offer a forecast of evidence showing that the action was instituted within the permissible period after the accrual of the cause of action.
 

 Soderlund v. Kuch
 
 ,
 
 143 N.C.App. 361
 
 , 366,
 
 546 S.E.2d 632
 
 , 636 (internal citations and quotation marks omitted),
 
 disc. review denied
 
 ,
 
 353 N.C. 729
 
 ,
 
 551 S.E.2d 438
 
 (2001).
 

 Here, defendants contends that the statute of limitations expired either when Alec turned nineteen years old on 19 January 2015 or absent tolling, at the latest 12 February 2015, three years after the last act of defendants. However, plaintiff argues that Alec's disability began at the time of surgery and continued until a GAL was appointed on 7 December 2015. In support of this issue, plaintiff submitted seven affidavits from the following: Dr. Ruston Stoltz ("Dr. Stoltz"), a
 
 *373
 
 primary care physician; Dr. Jeffrey Gray ("Dr. Gray"), a neuropsychologist; Kelly Lonnberg, the GAL's attorney; Jake Warrum, an attorney; Nancy Edwards, Alec's schoolteacher; the GAL; and Alec.
 

 Dr. Stoltz stated that as a result of Alec's stroke and other disabilities, Alec's mental and physical status fluctuates, Alec is blind in both eyes, the right side of Alec's body has been adversely affected, and Alec has slowed cognition and delayed concentration. Dr. Stoltz stated that as of November 2015 and the period since that time, it was his opinion that as a result of his existing disabilities, Alec lacked "sufficient capacity to manage his own affairs and that he needs the assistance of his mother and/or others to assist him in managing his business and medical conditions, and/or to communicate important decisions on his behalf." Dr. Gray stated that he had seen Alec on 26 August 2015 and 29 September 2015 and Alec "continued to present with a pattern of mild neurocognitive compromise[ ]" and that "[v]erbal problem solving" was also an issue. The GAL's attorney stated that after Alec's brain surgery and stroke, his "physical limitations were obvious," he "spoke and moved slowly and laboriously[,]" he "struggled in many areas[,]" and he had "slowed cognitive processing ... mak[ing] it impossible for him to support himself, live independently or handle his own complicated medical care or his own finances." Jake Warrum stated that he was familiar with
 
 *344
 
 Alec's conditions and his point of contact was always through Alec's mother. Nancy Edwards stated that Alec needed "intensive assistance to achieve academic and non-academic tasks[ ]" and that "his mental frustration and physical disabilities severely limited his ability[ ]" to perform well. Plaintiff stated that Alec's stroke and surgery debilitated him mentally and physically and that he was not capable of handling his own affairs. Finally, Alec stated in his affidavit that ever since the surgery and stroke, he had difficulty thinking and focusing, did not trust himself in dealing with business matters, and did not understand his present legal case.
 

 Defendants submitted the affidavit of Dr. George Corvin ("Dr. Corvin"), a general and forensic psychiatrist. Dr. Corvin reviewed Alec's medical, vocational rehabilitation, occupational rehabilitation, education, and other personal records, as well as the deposition transcripts of Alec and his mother, and opined to a reasonable degree of medical certainty that Alec had "been a competent adult continuously since his eighteenth (18) birthday on January 19, 2014." Dr. Corvin also stated that Alec was "currently a competent adult" and capable of managing his personal affairs and making decisions about his person, property, and family.
 

 We believe there is evidence from which a fact finder could determine that Alec was competent when the statute of limitation expired; however, viewing all the evidence in the light most favorable to plaintiff, we find that plaintiff has forecasted sufficient evidence to create a genuine issue of material fact as to whether Alec was incompetent at the time the statute of limitation expired, tolling the statute. Plaintiff has presented evidence from which a fact finder could determine that plaintiff's action was instituted within the permissible period after the accrual of the cause of action. Accordingly, there is a genuine issue of material fact and the trial court erred by granting summary judgment in favor of defendants. The 16 May 2017 order of the trial court is reversed and the case remanded for further proceedings.
 

 REVERSED AND REMANDED.
 

 Judges STROUD and ZACHARY concur.