IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-768

Filed 1 October 2024

Cumberland County, No. 22 CVS 4999

DEVONWOOD-LOCH LOMOND LAKE ASSOCIATION, INC., et al., Plaintiffs,

v.

CITY OF FAYETTEVILLE, Defendant.

Appeal by Plaintiffs from order entered 14 March 2023 by Judge William R. Pittman in Cumberland County Superior Court. Heard in the Court of Appeals 21 February 2024.

*The Law Office of Matthew I. Van Horn, P.L.L.C., by Matthew I. Van Horn, and Edmisten & Webb Law, by William W. Webb, Jr., for plaintiffs-appellants.*

*Poyner Spruill LLP, by Keith H. Johnson and Stephanie L. Gumm, and Fayetteville City Attorney's Office, by Lachelle H. Pulliam, for defendant-appellee.*

MURPHY, Judge.

Where a plaintiff alleges that a defendant municipality engaged in acts supporting a claim of inverse condemnation, inverse condemnation is only exclusive of other remedies to the extent the other remedies either are, in substance, themselves claims for inverse condemnation or arise in topic areas where our courts have said that inverse condemnation is the exclusive remedy. Otherwise, ordinary claims for damages to real property remain available to a plaintiff alongside inverse condemnation pursuant to N.C.G.S. § 40A-51(c). Here, where portions of Plaintiffs'

claim alleging negligence, negligence *per se*, nuisance, and trespass in the form of damage to property did not allege inverse condemnation in substance and were not otherwise barred by statute of limitations, governmental immunity, or collateral estoppel, the trial court's dismissal of those portions of Plaintiffs' claims was improper.

## BACKGROUND

This case concerns the flooding of several lakes during Hurricane Matthew, the resulting damage from which Plaintiffs allege the city is responsible. Specifically, Plaintiffs allege that, during Hurricane Matthew, dams located on four amenity lakes owned by Plaintiffs overtopped, causing the lakes to drain. As a result, not only did Plaintiffs lose their lakes and dams, but the city's drainage system, which had previously discharged into the amenity lakes, also began discharging stormwater directly onto the now-dry lakebeds.

Claiming that Defendant City of Fayetteville was responsible for the damage to the amenity lakes, Plaintiffs brought claims in the U.S. District Court for the Eastern District of North Carolina ("E.D.N.C.") for violations of 42 U.S.C. § 1983 and takings under the Fifth Amendment, as well as seven state law claims for breach of easements, inverse condemnation, negligence, negligence per se, nuisance, trespass, and quantum meruit. However, the U.S. District Court entered an order on 6 August 2021 granting summary judgment to Defendant on the federal claims, declining to exercise supplemental jurisdiction over the seven state claims and dismissing the

state claims without prejudice. In entering the order, the federal court reasoned, in relevant part, that summary judgment was appropriate as to the federal takings claim because there was no interpretation of the evidence under which Defendant had caused the dams to overtop:

> The case concerns four lakes and dams that the four plaintiff homeowners' associations ("HOAs") own. The lakes were created by placing dams on tributaries to the Cape Fear River and impounding the waters. Private landowners constructed all four dams before 1961. The private landowners built the dams for recreational purposes, and the North Carolina Department of Environmental Quality ("NCDEQ") lists the dams as "amenity" dams[.]

> The City annexed Devonwood-Loch Lomond in 1996 and annexed the other three HOA properties in 2005. The City maintains infrastructure to manage stormwater. Stormwater drains into and passes through the four dams and lakes. Several regulations, including the Stormwater Ordinance, regulate the City's stormwater infrastructure. The City also holds a federal National Pollutant Discharge Elimination System ("NPDES") permit, which authorizes the City to discharge stormwater from its separate storm sewer system ("MS4") into State waters.

> In October 2016, Hurricane Matthew hit Fayetteville, North Carolina. Hurricane Matthew generated up to 11.22 inches of rain over a twenty-four-hour period, and 7.39 inches of rain over a six-hour period, in the relevant watersheds. Hurricane Matthew was significantly more intense than the "100-year storm," which is 8.41 inches in twenty-four hours and 6.04 inches in six hours.

> During Hurricane Matthew, all four of the relevant dams overtopped, meaning that flood waters rose above the crest of each dam. Three dams (Devonwood-Loch Lomond, Upper Rayconda, and Arran Lake) breached and lost the

ability to impound water. Thus, the lakes returned to their natural state, with the tributaries meandering through the lakebeds. The fourth dam, Strickland Bridge Road, did not breach but suffered severe damage.

The State classifies the four dams as small, "high hazard dams," meaning that they must be able to withstand a storm generating one-third of the "probable maximum precipitation" ("1/3 PMP") over a six- or twenty-four-hour period in the area. Even though Hurricane Matthew exceeded the 100-year storm, it did not exceed 1/3 PMP. The dams did not meet the 1/3 PMP standard when Hurricane Matthew struck.

Freese and Nichols, an engineering consulting firm specializing in water resources, conducted hydrologic modeling of the four relevant watershed sub-basins. Hydrologists study the movement, distribution, and management of water. Methodologies include projecting the rise and peak of stormwater in a waterway under storm conditions and accounting for land use conditions in the watershed affecting the rate and volume of stormwater runoff. Hydrologists can use hydrologic modeling to model the rate and volume of stormwater based on historical land use conditions.

Freese and Nichols used hydrologic modeling to determine how high the water would have risen if Hurricane Matthew had occurred at an earlier date. In doing so, Freese and Nichols accounted for stormwater runoff in watersheds above the dams and the amount of impervious surfaces in the watersheds in the years for which it ran models.

Freese and Nichols produced a hydrologic model showing what would have happened if Hurricane Matthew had occurred in 1961, shortly after the four dams were constructed and before significant urbanization in the watersheds above the dams. The model showed that all four dams would have overtopped in 1961 even if no urbanization had occurred in the watersheds between 1961 and 2016.

4

Freese and Nichols also ran hydrologic models showing what would have happened if Hurricane Matthew had occurred in 1996 (when the City annexed Devonwood-Loch Lomond) and 2005 (when the City annexed the other three communities). The models showed that all four dams would have overtopped in 1996 or 2005 even if no urbanization had occurred between annexation and 2016. The models also showed that the four dams did not meet 1/3 PMP at the time of annexation.

Freese and Nichols produced a hydrologic model for 2016, which predicted what actually occurred—all four dams overtopped. Together, the models showed that the increase in stormwater generated in the water basins above the dams between annexation and 2016 was negligible and that the majority of stormwater runoff due to urbanization occurred before the City annexed the four properties.

. . . .

For a flood-based taking, a plaintiff needs to "present evidence comparing the flood damage that actually occurred to the flood damage that would have occurred if there had been no government action at all." *St. Bernard Par. Gov't* [*v. United States*, 887 F.3d 1354, 1363-68 (Fed. Cir. 2018)] (plaintiffs failed to show causation where they merely alleged that the government's construction and operation of a channel led to flood damage during Hurricane Katrina, but failed to provide a baseline against which to compare the government's actions). When evidence indicates that flooding would have damaged the property even absent government action, a plaintiff fails to state a takings claim. *See. e.g., Sanguinetti* [*v. United States*, 264 U.S. 146, 149-50 (1924)] (plaintiff failed to state a takings claim where property flooded before the government built the canal); *cf.* [*United States v. Archer*, 241 U.S. 119, 132 (1916)]. Put simply, a plaintiff must show that governmental action proximately caused the property damage. *See St. Bernard Par. Gov't*, 887 F.3d 1363-68.

5

. . . .

In *St. Bernard Parish Government*, [the] plaintiffs alleged that the government's operation of a municipal system led to flood damage during a hurricane, but plaintiffs failed to provide a baseline against which to compare the government's actions. *See St. Bernard Par. Gov't*, 887 F.3d at 1363-68. As in *St. Bernard Parish Government*, [P]laintiffs in this case fail to compare "the flood damage that actually occurred to the flood damage that would have occurred if there had not been government action at all." *Id.*

As discussed, "takings liability must be premised on affirmative government acts." *Id.* at 1361-62 & n.4 (collecting cases) . . . . In the flooding context, "the theory that the government failed to maintain or modify a government-constructed project may state a tort claim, [but] it does not state a takings claim." [*Id.*] . . . . Thus, for example, a government's negligence or failure to maintain sewage or drainage systems resulting in flooding does not create a federal takings claim. . . .

. . . .

Even viewing the record in the light most favorable to [P]laintiffs, [P]laintiffs fail to present evidence concerning the source or causation of siltation or debris accumulation, its relationship to flooding, or an affirmative act by the City. Plaintiffs also fail to offer an expert rebuttal contesting Rutledge's testimony. Thus, even viewing the record in the light most favorable to [P]laintiffs, [P]laintiffs fail to create a genuine issue of material fact concerning whether the dams would not have overtopped but for the City's actions. In contrast, the City has presented uncontradicted expert testimony showing that the dams would have overtopped even absent government action. . . . . Accordingly, no genuine issue of material fact exists.

. . . .

'The City argues that judicial economy weighs in favor of the court exercising supplemental jurisdiction over [P]laintiffs' state law claims. In support, the City notes that the case has been pending for approximately three years, the parties engaged in substantial discovery, and the court has invested significant resources. The City also argues that the absence of causation evidence is similarly fatal to [P]laintiffs' state law claims. . . . .

Plaintiffs' remaining claims involve seven hotly contested and unsettled issues of state tort law. Moreover, although the parties have engaged in extensive discovery, they will be able to use that discovery in state court. Accordingly, after balancing the relevant factors, the court declines to exercise supplemental jurisdiction over [P]laintiffs' remaining state law claims. . . . Thus, the court dismisses without prejudice [P]laintiffs' state law claims.

On 16 September 2022, Plaintiffs filed the instant complaint against Defendant in Superior Court, bringing only the state claims that were previously dismissed without prejudice: breach of easements, inverse condemnation, negligence, negligence *per se*, nuisance, trespass, and *quantum meruit*. The complaint alleged that the manner in which the city conducted its stormwater drainage led to the overtopping of the dams and the subsequent dumping of stormwater onto the now-dry lakebeds.

Defendant moved to dismiss each claim under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure, citing collateral estoppel and a number of claim-specific reasons for the dismissal:

(1) All of Plaintiffs' claims are barred by collateral estoppel because the U.S. District Court for the Eastern District of

North Carolina conclusively determined a dispositive issue (causation) that forecloses each of Plaintiffs' claims and cannot be relitigated in this second action. *See* Order on Summary Judgment, *Devonwood-Loch Lomond Lake Association, Inc., et al. v. City of Fayetteville*, No. 5:18-CV-270 (E.D.N.C.) (August 6, 2021)[.] . . .

(2) In addition, all of Plaintiffs' claims fail for independent, claim-specific reasons:

a. Count 1 (breach of easement), Count 3 (negligence), Count 4 (negligence per se), Count 5 (nuisance), Count 6 (trespass), and Count 7 (quantum meruit/unjust enrichment) fail to state a claim because Plaintiffs' exclusive remedy for an alleged deprivation of the use of their property by a governmental entity with the power of eminent domain is an inverse condemnation claim.

b. Count 2 (inverse condemnation) is barred by the statute of limitations.

c. Count 3 (negligence), Count 4 (negligence *per se*), Count 5 (nuisance), Count 6 (trespass), and Count 7 (quantum meruit/unjust enrichment), which seek to impose liability for the City's exercise of a governmental function, are barred by governmental immunity. Accordingly, subject-matter jurisdiction and personal jurisdiction for these claims is lacking and, likewise, Plaintiffs have failed to state a claim.

d. Count 3 (negligence) and Count 4 (negligence *per se*), Count 5 (nuisance), Count 6 (trespass), and Count 7 (quantum meruit/unjust enrichment) also fail to state a claim because, contrary to the complaint, well-settled North Carolina common law does not impose a legal obligation on municipalities to upgrade privately owned dams to withstand catastrophic storms such as Hurricane Matthew, the hurricane that caused the property damage for which Plaintiffs seek compensation from the City.

e. Count 4 (negligence *per se*) fails to state a claim because the statues, ordinances, and regulations that Plaintiffs rely on for this claim do not provide a private right of action to private parties who are dissatisfied with a municipality's stormwater management efforts.

8

After further briefings from both Plaintiffs and Defendant, the trial court granted Defendant's motion to dismiss with prejudice in a one-page order entered 14 March 2023 "based upon Rules 12(b)(1), (b)(2), and (b)(6)." Plaintiffs timely appealed.

## ANALYSIS

Plaintiffs argue Defendant's motion to dismiss should have been denied. Given the brevity of the trial court's order granting Defendant's motion to dismiss, Plaintiffs have attempted to address multiple possible bases for the trial court's dismissal order on appeal. Specifically, Plaintiffs ask us to consider whether the Superior Court complaint was barred by collateral estoppel; whether, for purposes of their claims that are not inverse condemnation, inverse condemnation is their exclusive remedy; whether any claims were time-barred; and whether governmental immunity shields Defendant from liability.[1] Bearing these possible bases for dismissal in mind, we

---

[1] Plaintiffs also argue the trial court erred in failing to make findings of facts and conclusions of law in its order. It bases this argument on *Gilbert Engineering Co. v. City of Asheville*, which it cites for the proposition that, "[t]o dismiss an action under Rule 12(b)(2), the trial court must '(1) find the facts on all issues joined in the pleadings; (2) declare the conclusions of law arising on the facts found; and (3) enter judgment accordingly.'" *Citing Gilbert Eng'g Co. v. City of Asheville*, 74 N.C. App. 350, 364, *disc. rev. denied*, 314 N.C. 329 (1985).

However, what *Gilbert* actually states is that, "*[i]n cases where the trial judge sits as the trier of facts*, he is required to (1) find the facts on all issues joined in the pleadings; (2) declare the conclusions of law arising on the facts found; and (3) enter judgment accordingly." *Id.* (emphasis added). Here, Plaintiffs have not argued that the trial court's order is factually defective with respect to any particular issue; rather, their reply brief makes clear that their argument is predicated entirely on a generalized objection to the absence of jurisdictional factfinding given the trial court's invocation of Rule 12(b)(2). As the trial court was not acting as the trier of fact, *Gilbert* is inapplicable.

Furthermore, the only readily identifiable basis for a dismissal under Rule 12(b)(2) in this case is governmental immunity, which is technically an issue of personal jurisdiction. *Torres v. City of Raleigh*, 288 N.C. App. 617, 620 (2023) ("This Court has consistently stated that a denial of governmental immunity should be classified as an issue of personal jurisdiction under Rule 12(b)(2).").

consider which, if any, of Plaintiffs' claims were properly dismissed, reviewing the issues de novo. *Lea v. Grier,* 156 N.C. App. 503, 507 (2003).

## A. Breach of Easements

In their complaint, Plaintiffs state their first claim for relief, breach of easements, as follows:

### FIRST CLAIM FOR RELIEF
Breach of Easements

52. The allegations contained in Paragraphs 1 - 51 of the Verified Complaint are realleged and incorporated herein by reference as if fully set forth herein.

53. The City and the City's Public Works Commission are grantees and [] Plaintiffs are grantors of the easements identified above and incorporated herein by reference. When the easements were granted to the City and the City's Public Works Commission by [] Plaintiffs, the City provided [] Plaintiffs with zero or nominal consideration in exchange for the easements.

54. The City has materially and continually breached the terms and spirit of the easements by acts and omissions resulting in the City's failure to maintain, improve, inspect, repair, or replace when necessary the equipment and other improvements installed in and on the properties encumbered by the easements.

55. The City has utilized the easements excessively and with a lack of regard for the cumulative impact on stormwater retention across and within [] Plaintiffs' property.

---

And, when governmental immunity is at issue, specific findings of fact and conclusions of law by the trial court are not required unless specifically requested by a party. *Id*. at 622-23. Plaintiffs did not request any such findings here.

56. The City's material breach of the terms and spirit of the easements entitles [] Plaintiffs to compensatory damages for the damages caused by the City's acts and omissions.

57. Plaintiffs are entitled to and hereby demand compensatory damages in an amount exceeding $75,000[.00], the exact amount to be determined at trial.

58. Alternatively or in conjunction with an award for compensatory damages, [] Plaintiffs are entitled to and hereby request a judgment by the Court ordering that the easements be terminated or modified to reflect the parties intentions and the scope of the City's use. This conduct has rendered the easements and installations thereon to be in decrepit condition and through their excessive use has caused the failure and destruction of the Plaintiffs' property, lakes, and dams.

This claim, by its own terms, refers to the allegedly excessive use or overburdening of the drainage easements and alleged failure by the city to maintain the lakes' surrounding infrastructure, seeking relief for the overtopping of the dams.

However, in the now-dismissed federal case, the U.S. District Court E.D.N.C. determined that no material issue of fact existed concerning whether Defendant caused the dams to overtop. Under such circumstances, we apply the doctrine of collateral estoppel. "Under the doctrine of collateral estoppel, or issue preclusion, a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies." *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 414 (1996) (marks omitted).

> A party asserting collateral estoppel is required to show that the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an issue actually litigated and necessary to the judgment, and that both the party asserting collateral estoppel and the party against whom collateral estoppel is asserted were either parties to the earlier suit or were in privity with parties.

*Id.* (marks omitted). "Moreover, the doctrine of collateral estoppel applies only to an issue of ultimate fact determined by a final judgment." *State v. Macon*, 227 N.C. App. 152, 157, *disc. rev. denied*, 367 N.C. 238 (2013); *see also State v. Edwards,* 310 N.C. 142, 145 (1984) ("Under the doctrine of collateral estoppel, an issue of ultimate fact, once determined by a valid and final judgment, cannot again be litigated between the same parties in any future lawsuit.").

Plaintiffs argue that "the issues raised by the state-law claims in the subject appeal are not the same as the federal takings claim involved in the federal action"; that their "state-law claims were not actually litigated in the federal action"; and that "any references in the federal court's [o]rder concerning the merits of a state-law claim were not 'necessary and essential' to the court's judgment on the federal takings issue." However, for the reasons explained more fully below, we remain unconvinced by these arguments and hold that collateral estoppel does apply to this issue.

Although Plaintiffs argue that the issues are not the same as those addressed in the federal order and that the state law claims were not actually litigated, the law of collateral estoppel does not, as Plaintiffs argue, depend on the underlying *legal* standards being argued. Plaintiffs' attempts to distinguish the law of takings from

the law governing its state law claims is therefore inapposite; collateral estoppel is a doctrine applicable to "issue[s] of ultimate fact[.]" *Macon*, 227 N.C. App. at 157; *Edwards,* 310 N.C. at 145. The underlying legal issues only affect its applicability insofar as they color the expression of the trial court's factual determinations—for example, when the subsequent action involves a burden of proof at odds with the burden under which the findings in the first were made. *Cf. Bishop v. Cnty. of Macon*, 250 N.C. App. 519, 523 (2016) (emphases in original) (marks omitted) ("[E]ven if the subsequent action is based on an entirely different *claim*, collateral estoppel bars "the subsequent adjudication of a previously determined *issue*."); *but see In re K.A.*, 233 N.C. App. 119, 127 (2014) (declining to apply collateral estoppel to findings in a prior action made under the preponderance of the evidence standard to a subsequent action that used the clear and convincing standard).

Here, the U.S. District Court unambiguously determined the issue of causation with respect to the takings claim despite the fact that it dismissed the claim on both the basis that Plaintiffs failed to allege affirmative acts and that the undisputed evidence established Defendant was not the cause of the dams' breakage:

> Even viewing the record in the light most favorable to [P]laintiffs, [P]laintiffs fail to present evidence concerning the source or causation of siltation or debris accumulation, its relationship to flooding, or an affirmative act by the City. Plaintiffs also fail to offer an expert rebuttal contesting Rutledge's testimony. Thus, even viewing the record in the light most favorable to [P]laintiffs, [P]laintiffs fail to create a genuine issue of material fact concerning whether the dams would not have overtopped but for the

> City's actions. In contrast, the City has presented
> uncontradicted expert testimony showing that the dams
> would have overtopped even absent government action. . .
> . Accordingly, no genuine issue of material fact exists.

The absence of causation was one of two bases used by the U.S. District Court to support its order granting summary judgment, but that does not negate the fact that the issue was "actually litigated and necessary to the judgment[.]" *Tucker*, 344 N.C. at 414, and therefore indeed dispositive. We must, therefore, acknowledge its preclusive effect. Were we to hold otherwise, a trial court's use of multiple dispositive lines of reasoning in an order would strip the *entire* order of preclusive effect under a collateral estoppel analysis, turning the doctrine on its head.

Plaintiffs also argue that the U.S. District Court's conclusions as to causation are not preclusive because the court explicitly left Plaintiffs' remaining claims for resolution in state court, believing them to depend on "hotly contested" and "unsettled" matters of North Carolina law. Whatever the rationale of the U.S. District Court, though, we are bound by its reasoning as to causation; and we, in our review, find the issue of causation dispositive as to the breach of easements claim— as well as Plaintiffs' other claims arising from Defendant's alleged role in the overtopping of the dams. Nothing in the U.S. District Court's ruling declining to exercise jurisdiction over Plaintiff's state claims makes its conclusions as to causation any less necessary to the resolution of the claims it *did* address, and those conclusions do, therefore, carry preclusive effect.

14

Resolution of the summary judgment motion in the federal case relied upon that court's determination that the city did not cause the dams' breakage. As Plaintiffs' breach of easements claim concerns the dams' breakage and not any subsequent dumping onto the dry lakebed, we need not consider any further arguments to determine that the trial court properly dismissed this entire claim, as it was fully precluded by the federal order.

### B. Inverse Condemnation

Plaintiffs state their second claim for relief, inverse condemnation, as follows:

**SECOND CLAIM FOR RELIEF**
Inverse Condemnation // North Carolina General Statute
§§ 40A-51 and 40A-3(b)(4)

59. The allegations contained in Paragraphs 1- 58 of the Verified Complaint are realleged and incorporated herein by reference as if fully set forth herein.

60. The City has unlawfully appropriated [] Plaintiffs' property for stormwater drainage. This action has been initiated within twenty four (24) months of the date of the taking of the affected property. A memorandum of this action is being filed with the Cumberland County, North Carolina register of deeds in accordance with N.C.G.S. § 40A-51(b).

61. The acts and omissions by the City []resulted in a taking and/or damage of Plaintiffs' property. This unlawful taking by the City of the Plaintiffs' property has and continues to negatively impact [] Plaintiffs' property and will continue to negatively impact the Plaintiffs' property into the future.

62. The City is not permitted to take [] Plaintiffs' property without just compensation to [] Plaintiffs. The City's acts

and omissions resulting in an unlawful taking has caused damage to [] Plaintiffs' property and has caused the Plaintiffs' property to decrease in value.

63. The City, through its acts and omissions, failed to prevent foreseeable damage to [] Plaintiffs' property.

64. The City's failure to compensate [] Plaintiffs[] for the damages to their property or to remedy the unlawful and decrepit stormwater management system has caused the Plaintiffs, composed of a relatively small percentage of City of Fayetteville residents, to bear the burden of costs and repairs which is a burden that should fall on the public and funds for public use as a whole.

65. The City's acts and omissions have caused the Plaintiffs to suffer damages to their Property and homes.

66. Plaintiffs are entitled to compensatory damages for inverse condemnation against the City in an amount [] exceeding $75,000[.00], the exact amount to be determined at trial. In addition, the Plaintiffs are entitled to a recovery of all reasonable attorney's fees they have incurred as a result of this action.

Unlike the breach of easements claim, Plaintiffs' claim for inverse condemnation, as expressed in their complaint, appears to concern both the past discharge of stormwater into Plaintiffs' lakes and the current and future discharge of stormwater onto Plaintiffs' now-dry lakebed. To the extent any portion of Plaintiffs' inverse condemnation claim concerns the allegation that Defendant caused the dams to overtop, our reasoning in section A of this opinion would have rendered dismissal of that portion of this claim appropriate. *See supra* Part A. Meanwhile, the dumping

of stormwater onto the dry lakebed, which was not contemplated in the federal court's order finding lack of causation, carries no preclusive effect.

Nevertheless, even with respect to the post-overtop discharge of stormwater, Plaintiffs' inverse condemnation claim *is* barred by statute of limitations. Under N.C.G.S. § 40A-51(a), a plaintiff may assert a claim for inverse condemnation against a state actor "within 24 months of the date of the taking of the affected property or the completion of the project involving the taking, whichever shall occur later." N.C.G.S. § 40A-51(a) (2023). Here, the "project," for limitations purposes, could only plausibly refer to the installation of the drainage system in 1961, placing the date of the completion of the project well outside the limitations period. *Peach v. City of High Point*, 199 N.C. App. 359, 370-71 (2009) (marks omitted) (holding that, while "the completion of the project in accordance with section 40A-51(a) does not necessarily equate to the completion of construction[,]" the completion of the project is derived from the end date of any inspection and repair on the construction), *disc. rev. denied*, 363 N.C. 806 (2010). Nor do we accept Plaintiffs' contention that the entirety of Defendant's wastewater management system could plausibly be considered a single, indefinitely ongoing "project" for limitations purposes—were that so, claims arising from any ongoing government endeavor would, practically speaking, never be barred.

Moreover, the "taking," for purposes of the post-hurricane dumping onto Plaintiffs' dry lakebeds, occurred during Hurricane Matthew in October 2016[2]—which, for purposes of our analysis, we will treat as 17 October 2016.[3] Even taking into account the tolling period under 28 U.S.C. § 1367(d) during the pendency of the federal case, *see* 28 U.S.C. § 1367(d) (providing for the tolling of state claims' statutes of limitations while a federal court is exercising supplemental jurisdiction over them), the tolling period of 8 June 2018 to 6 August 2021—the dates of the filing of the federal complaint and entry of the federal dismissal order, respectively—places the filing date of the state action on 16 September 2022 approximately eight months outside the allowable 24-month period.[4] Accordingly, Plaintiffs' inverse condemnation claim was barred by the limitations period in N.C.G.S. § 40A-51(a).

---

[2] We have held that, for purposes of limitations in flood-based inverse condemnation actions, the taking itself takes place when flooding occurs, not when the structure causing the flooding is put into place. *Lea Co. v. N. Carolina Bd. of Transp.*, 308 N.C. 603, 629 (1983) ("As we have previously pointed out, the plaintiff's claim for relief for inverse condemnation did not arise until injury had been inflicted to its property by excess flooding directly resulting from the defendant's structures.").

[3] Though Plaintiffs do not specify the exact date of the overtopping in their complaint, we take judicial notice of the fact that Hurricane Matthew affected the Caribbean and southeastern United States between 28 September 2016 and 9 October 2016, with the latest recorded cresting of the Cape Fear River occurring 17 October 2016. National Weather Service, *Hurricane Matthew in the Carolinas: October 8, 2016* (Aug. 21, 2024, 12:08 PM), https://www.weather.gov/ilm/Matthew; *see also* N.C.G.S. § 8C-1, Rule 201(b)(2) (2023) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *State v. Bucklew*, 280 N.C. App. 494, 505 (2021) ("[W]eather reports from the National Weather Service are a result of data gathered by the National Weather Service and thus typically are documents of indisputable accuracy.").

[4] Our "pausing" approach to the application of 28 U.S.C. § 1367(d) reflected in this analysis is, we note, at odds with the approach taken by previous panels of this court. In fact, in *Huang v. Ziko*, we specifically rejected the idea that a plaintiff would be entitled when the federal action was dismissed to the time remaining under the state statute of limitations at the time the federal action

was commenced, describing such an interpretation as "untenable" and "contrary to the policy in favor of prompt prosecution of legal claims":

> As the parties recognize, "filing an action in federal court which is based on state substantive law . . . toll[s] the statute of limitations while that action is pending." *Clark v. Velsicol Chemical Corp.,* 110 N.C. App. 803, 808[] . . . (1993), *aff'd per curiam,* 336 N.C. 599[] . . . (1994). The parties agree that plaintiff's federal action was no longer pending for the purpose of tolling the statute of limitations when the United States Court of Appeals reached its decision on 7 December 1995. *See Clark,* 110 N.C. App. 803[] . . . (holding that because a petition for writ of certiorari to the United States Supreme Court is not an appeal of right, the federal action is not alive for the purpose of tolling the statute of limitations while a decision to allow or deny such a petition is pending). However, the parties disagree as to whether plaintiff had additional time to file his complaint in state court after the United States Court of Appeals reached its decision.
>
> Plaintiff contends that once the federal action was no longer pending, the time for filing his complaint in state court should have been extended for the portion of the three-year limitations period that had not been used when he filed the federal action. Since less than a year and a half had passed when plaintiff filed his federal action, he would have had more than a year and a half after 7 December 1995 to file his complaint in state court.
>
> Plaintiff's contention is untenable. The rule which plaintiff would have this Court adopt is contrary to the policy in favor of prompt prosecution of legal claims. Furthermore, such a rule is contrary to the general rule that "[i]n the absence of statute, a party cannot deduct from the period of the statute of limitations applicable to his case the time consumed by the pendency of an action in which he sought to have the matter adjudicated, but which was dismissed without prejudice as to him[.]" 51 Am. Jur. *Limitation of Actions* § 311 (1970). In this case, no statute or rule provides for the exclusion of the time during which the federal action was pending from the limitations period.

*Huang v. Ziko*, 132 N.C. App. 358, 360-61 (1999); *see also Harter v. Vernon*, 139 N.C. App. 85, 89-90, *disc. rev. denied*, 353 N.C. 263 (2000), *cert. denied*, 532 U.S. 1022 (2001).

However, since *Huang* was decided, the U.S. Supreme Court has held in *Artis v. District of Columbia*, 583 U.S. 71, 74, 80-82 (2018), that, contrary to our prior practice, 28 U.S.C. § 1367(d) *does* require a "pausing" approach. There, the U.S. Supreme Court discussed the trend among exceptions to statutes of limitations to adopt either a "pausing" approach or a "grace period" approach:

> First, the period (or statute) of limitations may be "tolled" while the claim is pending elsewhere.[] Ordinarily, "tolled," in the context of a

time prescription like § 1367(d), means that the limitations period is suspended (stops running) while the claim is *sub judice* elsewhere, then starts running again when the tolling period ends, picking up where it left off. *See* Black's Law Dictionary 1488 (6th ed. 1990) ("toll," when paired with the grammatical object "statute of limitations," means "to suspend or stop temporarily"). This dictionary definition captures the rule generally applied in federal courts. See, *e.g., Chardon v. Fumero Soto*, 462 U.S. 650, 652, n. 1[] . . . (1983) (Court's opinion "use[d] the word 'tolling' to mean that, during the relevant period, the statute of limitations ceases to run").[] Our decisions employ the terms "toll" and "suspend" interchangeably. For example, in *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538[] . . . (1974), we characterized as a "tolling" prescription a rule "suspend[ing] the applicable statute of limitations," *id.*, at 554[] . . . ; accordingly, we applied the rule to stop the limitations clock, *id.*, at 560-561[] . . . .[] We have similarly comprehended what tolling means in decisions on equitable tolling. See, *e.g., CTS Corp. v. Waldburger*, 573 U.S. [1, 9] (2014) (describing equitable tolling as "a doctrine that pauses the running of, or 'tolls' a statute of limitations" (some internal quotation marks omitted)); *United States v. Ibarra*, 502 U.S. 1, 4, n. 2[] . . . (1991) (*per curiam* ) ("Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.").

In lieu of "tolling" or "suspending" a limitations period by pausing its progression, a legislature might elect simply to provide a grace period. When that mode is adopted, the statute of limitations continues to run while the claim is pending in another forum. But the risk of a time bar is averted by according the plaintiff a fixed period in which to refile. A federal statute of that genre is 28 U.S.C. § 2415. That provision prescribes a six-year limitations period for suits seeking money damages from the United States for breach of contract. § 2415(a). The statute further provides: "In the event that any action . . . is timely brought and is thereafter dismissed without prejudice, the action may be recommenced within one year after such dismissal, regardless of whether the action would otherwise then be barred by this section." § 2415(e).[] . . . .

*Artis v. District of Columbia*, 583 U.S. 71, 74, 80-82 (2018). In answering the statutory question, the United States Supreme Court held both that "toll," as used in 28 U.S.C. § 1367(d), specifically refers to the pausing approach and that 28 U.S.C. § 1367(d) remains enforceable, even as against state policy, via the Necessary and Proper Clause of the U.S. Constitution. *Id.* at 82-90.

In light of this clarification, we apply 28 U.S.C. § 1367(d) as a pausing provision, notwithstanding our prior holding in *Huang*.

## C. Negligence

Plaintiffs state their third claim, negligence, as follows:

**THIRD CLAIM FOR RELIEF**
Negligence

67. The allegations contained in Paragraphs 1- 66 of the Verified Complaint are realleged and incorporated herein by reference as if fully set forth herein.

68. The City has been negligent, reckless, willful, and wanton in one or more of the following ways:
   a. In failing to maintain, upgrade, or inspect its MS4, which the City utilizes to discharge the City's stormwater on the Plaintiffs' property.
   b. In failing to upgrade its MS4 to accommodate the cumulative impact of increased and inadequately supervised development of residential and commercial property upstream from [] Plaintiffs' property, and discharging the stormwater from the same residential and commercial developments onto [] Plaintiffs' property.
   c. In collecting stormwater in various drainage bases onto areas not owned by the City or on public land and draining the stormwater onto the Plaintiffs' property knowing that the drainage of the stormwater onto the Plaintiffs' property would cause significant damage to the Plaintiffs' property.
   [d]. Discharging stormwater on the Plaintiffs' property causing flooding and damage to [] Plaintiffs' property.

69. In North Carolina, municipalities have a duty to maintain their stormwater drainage systems and are liable for the negligent maintenance of stormwater drainage systems.

70. As a direct and proximate result, the Plaintiffs have suffered damages to their property, their homes and through the diminution of the value of their property.

21

> 71. Plaintiffs are entitled to compensatory damages in an amount [] exceeding $75,000[.00], the exact amount to be determined at trial.

As expressed, this claim involves both the past discharge of stormwater into Plaintiffs' lakes and the continuing discharge of stormwater onto Plaintiffs' now-dry lakebed since the dams' breach; thus, as with the previous claim, we examine only the post-breach dumping in light of the preclusive effect of the federal court order. *See supra* Part A.

With respect to the non-precluded aspects of this claim, under N.C.G.S. § 40A-51(c), "[n]othing in this section [codifying the right to claim inverse condemnation] shall in any manner affect an owner's common-law right to bring an action in tort for damage to his property." N.C.G.S. § 40A-51(c) (2023). While Defendant points us to cases in which we have held that inverse condemnation operates exclusively of other remedies in tort, our research reveals that such cases have universally either dealt with instances where the tort claims sounded in inverse condemnation in substance or applied to specific factual circumstances. *See, e.g.*, *Cape Fear Pub. Util. Auth. v. Costa*, 205 N.C. App. 589, 596 (2010) (marks omitted) ("[O]ur courts have repeatedly held that the exclusive remedy for failure to compensate for a 'taking' is inverse condemnation . . . ."); *Smith v. City of Charlotte*, 79 N.C. App. 517, 521 (1986) (emphasis added) ("It has been established that they no longer have any private common law actions for damages in trespass or nuisance *in municipal airport*

*overflight cases*; their sole remedy is inverse condemnation."). However, the general rule remains that remedies for damages in tort remain available to landowner plaintiffs. *See* N.C.G.S. § 40A-51(c) (2023); *Howell v. City of Lumberton*, 144 N.C. App. 695, 700 (2001) ("[I]f a common-law action for negligence by defendant would otherwise be available to plaintiff, it is preserved under N.C.G.S. § 40A-51(c) and not preempted by the inverse condemnation statute.").

Here, Plaintiffs have alleged, in relevant part, that Defendant was negligent in "[d]ischarging stormwater on the Plaintiffs' property[,] causing flooding and damage to [] Plaintiffs' property." This is "an action in tort for damage to [Plaintiffs'] property[,]" N.C.G.S. § 40A-51(c) (2023); it is not, either in form or substance, a claim for inverse condemnation. We therefore hold that the availability of inverse condemnation does not bar Plaintiffs' negligence claim as to the discharge of stormwater onto the lakebed.

Nor was this claim barred by the applicable statute of limitations. As alleged, the dumping of stormwater onto Plaintiffs' dry lakebeds is a discrete instance of negligence, and it necessarily arose at the time of and subsequent to the dams overtopping, emptying the lakes. Unlike inverse condemnation, negligence is subject to a three-year—not two-year—statute of limitations. *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 45 (2003) (citing N.C.G.S. § 1-52(5) (2003)), *disc. rev. denied*, 358 N.C. 235 (2004). While the analysis in the previous section demonstrates that Plaintiffs' claim was brought more than two years after the dams' overtopping,

it was brought within the allowable three-year period for negligence claims. *See supra* Part B.

Finally, governmental immunity did not bar this claim. "Governmental immunity covers *only* the acts of a municipality or a municipal corporation committed pursuant to its governmental functions. Governmental immunity does not, however, apply when the municipality engages in a proprietary function." *Est. of Williams ex rel. Overton v. Pasquotank Cnty. Parks & Recreation Dep't*, 366 N.C. 195, 199 (2012). Under N.C.G.S. § 160A-311, stormwater management is a quintessentially proprietary municipal function. *See* N.C.G.S. § 160A-311 (2023) (defining electricity, water, and gas provision; wastewater and solid waste management; cable television; and parking, airports, and public transportation as "public enterprise[s]" alongside stormwater management); *see also Pulliam v. City of Greensboro*, 103 N.C. App. 748, 751-52 (categorizing two public enterprises under N.C.G.S. § 160A-311—airport management and sewer services—as proprietary rather than governmental functions), *disc. rev. denied*, 330 N.C. 197 (1991).

Accordingly, the trial court erred in dismissing the portion of the negligence claim concerning Defendant's post-overtop discharging of stormwater.

### D. Negligence Per Se

Plaintiffs state their fourth claim, negligence *per se*, as follows:

**FOURTH CLAIM FOR RELIEF**
<u>Negligence Per Se</u>

72. The allegations contained in Paragraphs 1-71 of the Verified Complaint are realleged and incorporated herein by reference as if fully set forth herein.

73. The City's acts and omissions described herein constitute a violation of North Carolina General Statute § 160A-311, et seq., Section 1, Chapter 12 of the Cumberland County Code and its own Stormwater Quality Management Program Plan and Administrative Manual for Implementation of the Stormwater Control Ordinance.

74. The City's violations of the subject regulations, ordinances, and state and federal law have caused damages to the Plaintiffs' property as described herein.

75. Plaintiffs are entitled to compensatory damages in an amount in exceeding $75,000[.00], the exact amount to be determined at trial.

For the reasons discussed with respect to negligence, this claim was also properly dismissed with respect to the overtopping of Plaintiffs' dams, but not with respect to the subsequent discharge of stormwater onto Plaintiffs' lakebeds. *See supra* Part C.

**E. Nuisance**

Plaintiffs state their fifth claim, nuisance, as follows:

**FIFTH CLAIM FOR RELIEF**
Nuisance—Recurring Nuisance

76. The allegations contained in Paragraphs 1 - 75 of the Verified Complaint are realleged and incorporated herein by reference as if fully set forth herein.

77. The City through its acts and omissions created a nuisance by utilizing [] Plaintiffs' property as a public use collection facility for stormwater. The City has failed to consider the cumulative impact of directing excessive stormwater over and into the Plaintiffs' property instead of

adequately managing, directing, and collecting stormwater through public use measures management.

78. Now that three of four of Plaintiffs' dams overtopped and Plaintiffs' lakes are gone, the City is discharging stormwater from its MS4 directly onto dry land owned by [] Plaintiffs.

79. The City's acts and omissions have created a nuisance per se which has become dangerous and a threat to the Plaintiffs' lives, health, and property.

80. The City has no right to neglect the inspection, maintenance, repair, and replacement of the easements with respect to the scope of the City's direction and dissemination of stormwater over and into the Plaintiffs' property in lieu of directing and disseminating the stormwater over and into public use facilities and property.

81. 'The City has no right to have neglected the City of Fayetteville Stormwater Management Ordinance and related City of Fayetteville stormwater management plans to the detriment of the Plaintiffs' lives, health, and property, by directing and discharging an unreasonable amount of stormwater over and into the Plaintiffs' property.

82. The Plaintiffs have suffered damages including loss of property, damages to their property, damages to the improvements on their property, damages to their health, and a diminution of value to their property.

83. Plaintiffs are entitled to compensatory damages in an amount [] exceeding $75,000[.00], the exact amount to be determined at trial.

This claim also involves both the past discharge of stormwater into Plaintiffs' lakes and the current and future discharge of stormwater onto Plaintiffs' now-dry lakebed;

however, given the preclusive effect of the federal court order, we examine only the post-overtop dumping onto Plaintiffs' dry lakebed. *See supra* Part A. Moreover, as with the negligence claim, the post-overtop discharge components of this claim are, in both expression and substance, claims for damages rather than claims for inverse condemnation, defeating any arguments by Defendant that inverse condemnation is Plaintiffs' exclusive remedy. *See supra* Part C. Finally, as before, governmental immunity does not bar this claim. *Id.*

As for the statute of limitations, nuisance claims, like negligence claims, are subject to a three-year limitations period. *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 511 (1990) (citing *Anderson v. Waynesville,* 203 N.C. 37 (1932)). Thus, the portion of Plaintiffs' nuisance claim based on the discharge of water onto the dry lakebed, which arose within the limitations period, is not time-barred. *See supra* Part C.

The trial court therefore erred in dismissing the portion of the nuisance claim concerning Defendant's post-overtop discharging of stormwater.

### F. Trespass

Plaintiffs state their sixth claim, trespass, as follows:

**SIXTH CLAIM FOR RELIEF**
Trespass-Recurring Trespass

84. The allegations contained in Paragraphs 1 – 83 of the Verified Complaint are realleged and incorporated herein by reference as if fully set forth herein.

85. The City has trespassed on the Plaintiffs' property without consent. The City has acted recklessly and without consideration of the Plaintiffs' property rights.

86. The Plaintiffs have been damaged from the cumulative and excessive amounts of stormwater the City has directed and discharged over and through the Plaintiffs' property in lieu of directing the stormwater through dedicated public use mechanisms and property.

87, Plaintiffs are entitled to compensatory damages in an amount in exceeding $75,000[.00], the exact amount to be determined at trial.

While not as clear as in the previous claim, the use of the present perfect tense—"has trespassed"—indicates that this claim refers to both the past discharge of stormwater into the lakes and the current discharge of stormwater onto the dry lakebeds. As before, the federal order is preclusive as to the damages caused prior to the breach of the dams, so that portion of the claim was properly dismissed. *See supra* Part A. However, as a claim for damages, the availability of inverse condemnation did not exclude Plaintiffs' ability to raise a claim for trespass. *See supra* Part C. Nor does governmental immunity apply. *Id.* Finally, as trespass and nuisance are governed by the same statute of limitations, *see Wilson*, 327 N.C. at 511, trespass is, for the same reason as nuisance, not time-barred. *See supra* Part E.

The trial court therefore erred in dismissing the portion of the trespass claim concerning Defendant's post-overtop discharging of stormwater.

### G. *Quantum Meruit*

Finally, Plaintiffs state their seventh claim, *quantum meruit*, as follows:

28

**SEVENTH CLAIM FOR RELIEF**
Quantum Meruit/Unjust Enrichment

88. The allegations contained in Paragraphs 1 – 87 of the Verified Complaint are realleged and incorporated herein by reference as if fully set forth herein.

89. The City has for at least thirty years enjoyed the direct and indirect benefits of the use of the Plaintiffs' private property identified herein for public use without compensation to the owners of the subject property. As a result, the City has been unjustly enriched.

90. The City has further enjoyed the direct and indirect benefits of the easements referenced herein for public use without compensation to the Plaintiffs. Additionally, the City has enjoyed the continuous financial benefit associated with avoiding the payment of the costs associated with the reasonable inspection, management, and upgrades to the easements and property owned by the Plaintiffs. As a result, the City has been unjustly enriched, and the expense has been incurred by the Plaintiffs.

91. The City is thus indebted to Plaintiffs for damages for the amounts necessary to repair or replace the easements and subject installations made by the City within the easements, to repair or replace the subject dams and lakes, and Plaintiffs are entitled to recover those damages from the City.

As expressed, this claim seeks recompense for the flooding of the lakes and the overtopping of the dams and makes no mention of the subsequent dumping by the city onto Plaintiffs' dry lakebeds. Thus, the federal court order is preclusive as to this entire claim, and it was properly dismissed. *See supra* Part A

**CONCLUSION**

The trial court correctly dismissed all claims arising from the overtopping of the dams themselves due to the federal order's preclusive effect on the issue of causation. It also correctly dismissed the entirety of Plaintiffs' inverse condemnation claim. However, Plaintiffs' claims for damages arising from Defendant's discharging of stormwater onto Plaintiffs' dry lakebeds—namely, negligence, negligence *per se,* nuisance, and trespass—were improperly dismissed. Accordingly, we reverse the trial court's dismissal order as to those issues and remand for further proceedings.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Judge WOOD concurs.

Judge TYSON concurs in part and dissents in part by separate opinion.

TYSON, Judge, concurring in part, dissenting in part.

I agree with the majority's conclusions regarding Plaintiffs' claims for breach of easements, negligence, negligence *per se*, nuisance, trespass, and *quantum meruit*. I concur with the majority's holding Plaintiffs' breach of easements and *quantum meruit* claims were precluded by the federal order and properly dismissed. I also concur with the majority's decision to reverse those portions of the trial court's order dismissing Plaintiffs' post-breach claims, which includes Plaintiffs' claims for negligence, negligence *per se*, nuisance, and trespass.

The majority's opinion erroneously affirms the trial court's order allowing Defendant's Rule 12(b) motion to dismiss Plaintiffs' inverse condemnation claim for purportedly bringing their claim after the statute of limitations had expired. Plaintiffs' inverse condemnation claim should have survived Defendant's Rule 12(b) motion to dismiss. Further evidence beyond the face of the compliant should have been presented prior to ruling on Plaintiffs' claim. I respectfully dissent.

## I.    Relevant Background

Plaintiffs' complaint asserted claims for inverse condemnation. Their complaint facially and expressly asserts: "This action has been initiated within twenty-four (24) months of the date of the taking of the affected property."

Defendant did not answer Plaintiff's complaint, but moved, pursuant to North Carolina Rules of Civil Procedure 12(b)(1), (b)(2), and (b)(6) to dismiss Plaintiffs'

claims. Defendant's bare motion asserted Plaintiffs' inverse condemnation claim was "barred by the statute of limitations."

A hearing was held on 13 February 2023. The trial court allowed Defendant's Rule 12(b) motions to dismiss, dismissing each of Plaintiffs' claims with prejudice. The trial court's brief order merely stated it had "carefully considered the pleadings, the written and oral arguments of counsel, and the relevant authority in the light most favorable to the Plaintiffs[.]" Apparently, the trial court considered matters outside the face of Plaintiffs' complaint.

## II. Analysis

Rule 8(c) of the North Carolina Rules of Civil Procedure provides: "In pleading to a preceding pleading, a party *shall set forth affirmatively* . . . statute of limitations, . . . , and any other matter constituting an avoidance or affirmative defense." N.C. R. Civ. P. 8(c) (emphasis supplied). This Rule further explains "[s]uch pleading shall contain a short and plain statement of any matter constituting an avoidance or affirmative defense sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved." *Id.*

"'A statute of limitations defense may properly be asserted in a Rule 12(b)(6) motion to dismiss, *if it appears on the face of the complaint that such a statute bars the claim.*'" *Shepard v. Ocwen Federal Bank, FSB*, 361 N.C. 137, 638 S.E.2d 197 (2006) (emphasis supplied) (quoting *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133,

136, 472 S.E.2d 778, 780 (1996)).  A statute of limitations defense is not a jurisdictional issue or bar, and trial "courts are under no obligation to raise the time bar *sua sponte*." *Day v. McDonough*, 547 U.S. 198, 205, 164 L. Ed. 2d 376, 381 (2006).

> The obvious purpose of . . . Rule 12(b) is to preclude any unfairness resulting from surprise when an adversary introduces extraneous material on a Rule 12(b)(6) motion, and to allow a party a reasonable time in which to produce materials to rebut an opponent's evidence once the motion is expanded to include matters beyond those contained in the pleadings.

*Coley v. N.C. Nat'l. Bank*, 41 N.C. App. 121, 126, 254 S.E.2d 217, 220 (1979).

Rule 12(b) permits a party to assert certain defenses "by motion", including the defense for failure to state a claim upon which relief may be granted.  N.C. R. Civ. P. 12(b)(6).  "A motion making any of these defenses shall be made before pleading if a further pleading is permitted.  The consequences of failure to make such a motion shall be as provided in sections (g) and (h)."  N.C. R. Civ. P. 12(b).  Rule 12(h)(2) provides: "A defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."

While Rule 12(b) motions must "be made before pleading if a further pleading is permitted[,]"  In contrast, Rule 12(c) permits a party "[a]fter the pleadings are closed but within such time as not to delay the trial" to "move for judgment on the pleadings."  N.C. R. Civ. P. 12(c).

"[W]hen the defendant pleads the statute of limitations *in his answer*, the plaintiff files no reply thereto and the complaint *shows upon its face* facts which, without more, support such plea in bar, the defendant's motion for judgment on the pleadings should be granted on that ground." *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 207, 171 S.E.2d 873, 879 (1970) (emphasis supplied) (citations omitted). "Once the [affirmative] defense of statute of limitations is raised, the burden is on the plaintiff to show that their claim is not time-barred." *Amward Homes, Inc. v. Town of Cary*, 206 N.C. App. 38, 55, 698 S.E.2d 404, 417 (2010).

"A statute of limitations can provide the basis for dismissal on a Rule 12(b)(6) motion *if the face of the complaint* establishes that plaintiff's claim is so barred." *Soderlund v. N.C. Sch. of the Arts*, 125 N.C. App. 386, 389, 481 S.E.2d 336, 338 (1997) (emphasis supplied). "Both a motion for judgment on the pleadings and a motion to dismiss for failure to state a claim upon which relief can be granted should be granted when a complaint fails to allege facts sufficient to state a cause of action or pleads facts which deny the right to any relief." *Robertson v. Boyd*, 88 N.C. App. 437, 440, 363 S.E.2d 672, 675 (1988).

> Rule 12(b) provides that a motion to dismiss for failure to state a claim under Rule 12(b)(6) shall be treated as one for summary judgment and disposed of as provided in Rule 56 where matters outside the pleading are presented to and not excluded by the court in ruling on the motion. Rule 12(c) contains an identical provision, stating that if, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment

and disposed of as provided in Rule 56.

*Horne v. Town of Blowing Rock*, 223 N.C. App. 26, 30, 732 S.E.2d 614, 617 (2012) (internal citations, quotation marks, and brackets omitted). Neither Rule 12(c) nor 56 was cited in the trial courts order as a basis for its ruling.

This Court has previously explained the careful scrutiny required when a trial court allows a judgment on the pleadings:

> Because a judgment on the pleadings is a *summary procedure resulting in a final judgment*, a motion for judgment on the pleadings must be *carefully scrutinized*. A motion for judgment on the pleadings is *not favored* by the courts, and the pleadings of the nonmovant will be liberally construed. The trial court is required to view the facts and permissible inferences in the *light most favorable to the nonmoving party*. The movant must show that there are no issues of material fact and that it is clear he is entitled to judgment. A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate. *In particular, a judgment on the pleadings in favor of a defendant who asserts the statute of limitations as a bar is proper when, and only when, all the facts necessary to establish the limitation are alleged or admitted.*

*Benson v. Barefoot*, 148 N.C. App. 394, 396, 559 S.E.2d 244, 246 (2002) (emphasis supplied) (citations and internal quotation marks omitted).

In *Benson*, because "[n]either the complaint nor the answer divulge[d] the dates" payments were made, it was "not possible to tell from the pleadings alone whether the payments were made within the limitations period." *Id.* While the

defendants in *Benson* correctly noted plaintiff possessed the burden of proof to prove the action was timely filed, "burdens of proof have no place in a motion for judgment on the pleadings, a motion which is ruled upon in the absence of any evidence." *Id.* This Court in *Benson* reasoned: "on a motion for judgment on the pleadings, dismissal is proper only if it appears *on the face of the complaint* that the plaintiff filed outside the limitations period." *Id.* at 396-97, 559 S.E.2d at 246 (emphasis supplied).

Here, the facts are similar to those in *Benson*. While the inverse condemnation claim in Plaintiffs' complaint alleged their action had been asserted within twenty-four months of the taking of their property, no date was provided. Defendant's Rule 12(b) motion was similarly sparse, and it merely provided Plaintiffs' claim was barred by "the statute of limitations". As explained in *Benson*, it is "not possible to tell from the pleadings alone whether the [alleged taking occurred] within the limitations period." *Id.* at 396, 559 S.E.2d at 246.The trail court erred in dismissing Plaintiff's inverse condemnation claim under Rule 12(b)(6),

### III.   Conclusion

I concur to affirm the majority's conclusions regarding dismissal of Plaintiffs' claims for breach of easements and *quantum meruit.* I also concur with the majority's conclusions to reverse dismissal of Plaintiff's post-breach claims for negligence, negligence *per se*, nuisance, trespass and remand.

Plaintiff's allegations must be taken as true and reviewed in the light most factorable to Plaintiff. The face of the complaint failed to provide definitive

information for the trial court to determine whether the affirmative defense of statute of limitations had passed on Plaintiff's inverse condemnation claim. The trial court's *sua sponte* allowance of Defendant's Rule 12(b) motion to dismiss on that basis was error and prejudicial. I respectfully dissent from that portion of the majority's opinion.